2000 ME 23

**STATE of Maine**

v.

**Marc TARMEY.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 14, 2000.

Decided Feb. 10, 2000.

Norman R. Croteau, District Attorney, Craig E. Turner, Deputy Dist. Atty., Auburn, for State.

Michael Whipple, Esq., Law Offices of William Maselli, Auburn, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Marc Tarmey appeals the judgment of the Superior Court (Androscoggin County, *Delahanty, J.*) entered on a jury verdict finding him guilty of theft by unauthorized use of property pursuant to 17–A M.R.S.A. § 360(1)(A) (1983).[1] Tarmey ar-

---

1. Title 17–A, section 360(1)(A) provides:
§ **360. Unauthorized use of property**
1. A person is guilty of theft if:

A. Knowing that he does not have the consent of the owner, he takes, operates or exercises control over a vehicle, or, know-

gues on appeal that the court erred in instructing the jury that he could be found guilty even if he did not intend to take, operate, or exercise control over a motor vehicle without the owner's consent at the time he first obtained possession of the vehicle. We affirm the judgment of conviction.

## I. BACKGROUND

[¶ 2] On August 20, 1998, Marc Tarmey asked his son's 18-year-old girlfriend, Heather Jeselskis, for a favor. He gave her $80 or $90 and asked her to rent a truck for him. Tarmey was planning to leave the State in the rented truck in order to avoid the consequences of an operating under the influence charge and an operating after suspension charge acquired while on probation for burglary and theft convictions. Jeselskis rented the truck for Tarmey and drove it to Tarmey's house, where Tarmey resided with three of his five children. The Tarmeys loaded the truck with Tarmey's washer and dryer, which he planned to sell for funds, two mattresses on which the family could sleep, and the family members' personal items. Because he was concerned that the police would be looking for him, Tarmey asked Jeselskis to drive the truck to a rendezvous point where he would take control of the truck. To transport himself to the rendezvous point, Tarmey obtained Jeselskis's consent to use her 1992 Ford Escort. Tarmey's sons, Chris and Phil, rode with Jeselskis in the rented truck. His daughter, April, rode with Tarmey in the Escort. The police stopped the truck, apparently in search of Tarmey. Tarmey saw that the police had stopped the truck and, abandoning his boys, he left the State with his daughter in Jeselskis's Escort.

[¶ 3] April testified that they had no particular destination in mind, only that they "thought about different ... places" and would "pretty much ... get there first and then ... decide." During the course of their wanderings, Tarmey would periodically stop and work construction in order to earn money. According to April, Tarmey wanted to show her places "like the Redwood Forest" and "like Anaheim," and "he taught [her] a lot" while she was otherwise unenrolled in school. Tarmey and April visited "a lot of places" in the Escort, including New York, Illinois, Iowa, the Dakotas, Oregon, and California before deciding to go to "Uncle Joe's" in Florida.

[¶ 4] Sometime in late September or early October, Tarmey and April drove to Maine to pick up Chris and Phil and bring the boys back to Florida. Shortly after returning to Florida, Tarmey was apprehended by the police. Jeselskis's father paid an auto carrier to transport the Escort back to Maine. According to Jeselskis, the Escort had approximately 30,000 additional miles on it when she recovered it, two months after it was taken.

[¶ 5] Tarmey was indicted by the grand jury for criminal restraint by a parent pursuant to 17-A M.R.S.A. § 303 (1983),[2] and for unauthorized use of property pursuant to 17-A M.R.S.A. § 360. After trial, the jury returned its verdict acquitting Tarmey of criminal restraint by a parent and convicting him of unauthorized use of property. The court sentenced Tarmey to 364 days and imposed a restitution order in the amount of $3,000 to compensate Jeselskis for the damage and depreciation to her Escort. Tarmey filed a timely notice of appeal.

## II. DISCUSSION

[¶ 6] This appeal presents a single legal issue: whether 17-A M.R.S.A. § 360(1)(A)

ing that a vehicle has been so wrongfully obtained, he rides in such vehicle;

. . . .

3. It is a defense to a prosecution under this section that the actor reasonably believed that the owner would have consented to his conduct had he [or she] known of it.

17-A M.R.S.A. § 360(1)(A) & (3) (1983).

2. The case at trial involved an issue of whether Tarmey properly had custody of April during their travels.

requires the State to prove that a defendant had the intent to use or exercise control over property without the owner's consent at the moment possession was initially obtained.

[¶ 7] Tarmey does not claim that Jeselskis gave him consent to take her Escort on his extended travels. Rather, Tarmey contends that, had the court instructed the jury properly, the jury would not have convicted him because Jeselskis's testimony clearly indicated that she consented to Tarmey's initial possession of the Escort.

[¶ 8] The court instructed the jury as follows:

> As to the second count ... Maine law says a person is guilty of theft if, knowing that he does not have the consent of the owner, he takes, operates, or exercises control over a vehicle.... The State must prove to you beyond a reasonable doubt that Mr. Tarmey took, operated, or exercised control over a vehicle, that this vehicle did not belong to him, but belonged to somebody else, in this case, specifically, Heather Jeselskis, and at the time he knew that he did not have the consent of Heather Jeselskis.

[¶ 9] We review jury instructions to ensure that they correctly informed the jury of the governing law. *See State v. Ashby*, 1999 ME 188, ¶ 3, 743 A.2d 1254, 1256. The interpretation of a statute is a question of law and is reviewed *de novo* by this Court. *See State v. Raymond*, 1999 ME 126, ¶ 6, 737 A.2d 554, 555. In order to effectuate the Legislature's intent, we look to the plain meaning of the language used in a statute, *see id.*, keeping in mind that we must construe penal statutes strictly so that a criminal offense is not created by inference or implication, *see Ashby*, 1999 ME 188, ¶ 6, 743 A.2d at 1257.

[¶ 10] The common law crime of larceny required the State to prove that the defendant had larcenous intent at the time he or she took possession of the property. *See Clewley v. State*, 288 A.2d 468, 474 (Me.1972); *State v. Boisvert*, 236 A.2d 419, 423 (Me.1967). However, the Maine Criminal Code "was intended to be a complete codification of common law principles," and the idiosyncracies of common law crimes no longer govern to the extent they conflict with the Code. *See State v. Poole*, 568 A.2d 830, 831 (Me.1990).

[¶ 11] In *Raymond*, we considered an appeal from convictions for burglary of a motor vehicle and theft by unauthorized use of property. We held that proof of the elements necessary to support the conviction for theft by unauthorized use of a motor vehicle also supported the conviction for burglary of a motor vehicle pursuant to 17–A M.R.S.A. § 405 (1985 & Supp.1999). *See Raymond*, 1999 ME 126, ¶¶ 6–9, 737 A.2d at 555–56. In response to the defendant's argument that the Legislature could not have intended to make proof of theft by unauthorized use of a motor vehicle tantamount to proof of burglary of a motor vehicle, because every violation of the former would necessarily be a violation of the latter, we noted:

> A violation of section 360(1)(A) does not necessarily result in a violation of section 405. A person can enter a vehicle with the owner's consent, but then take the vehicle for an extended drive that the owner did not authorize and violate section 360(1)(A), while not violating section 405.

*Id.*, ¶ 9, 737 A.2d at 556.

[¶ 12] The language of section 360(1)(A), when redacted to eliminate language irrelevant to the facts of this case, reads, "A person is guilty of theft if ... [k]nowing that he does not have the consent of the owner, he ... operates or exercises control over a vehicle." 17–A M.R.S.A. § 360(1)(A). The plain meaning of this language indicates that a person can be convicted of theft by unauthorized use of a motor vehicle despite the fact that he or she initially had permission to use the vehicle, if the control exercised over

the vehicle extends beyond the use originally permitted. Accordingly, we find no error in the court's instruction.

The entry is:

Judgment affirmed.