STATE of Maine

v.

Scott PREWARA.

Supreme Judicial Court of Maine.

Argued Oct. 7, 1996.

Decided Dec. 13, 1996.

Stephanie Anderson, District Attorney and Julia Sheridan (Orally), Assistant District Attorney, Portland, for the State.

Peter W. Evans (Orally), Portland and Neale A. Duffett, Cloutier, Barrett, Cloutier & Conley, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

Scott Prewara appeals from the sentences imposed in the Superior Court (Cumberland County, *Cole, J.*) following his guilty pleas to two counts of gross sexual assault. 17–A M.R.S.A. § 253(1)(B) (Supp.1996) (Class A).[1] We disagree with Prewara's contentions that a basic period of incarceration imposed by the court of forty years is excessive and that imposing consecutive sentences is inappropriate. The record, however, discloses that the court did not sufficiently distinguish between the maximum periods of incarceration and the final sentences, nor does the record indicate that the court fully considered all of the relevant factors in determining the maximum periods of incarceration. Accordingly, we vacate the sentences and remand for resentencing.

On September 23, 1991, Prewara, who was then seventeen years and nine months old, visited his aunt's house in Portland at around 6 p.m. At some point, Prewara was left alone for about one half hour with a six-month old female baby. Prewara sexually assaulted the child, bruising her and substantially tearing her vagina. Christine D'Amico, a friend of the baby's mother who had earlier left the house, returned shortly after the assault to find Prewara in the bathroom splashing running water over the baby in the bathtub. D'Amico could see that the baby's vagina was bruised and that there was blood in the bath water and on the infant's clothes. D'Amico left with the baby, but later returned with her boyfriend, and the two of them assaulted Prewara.

After responding around midnight to a report of the sexual assault, Officer William Ridge and three other officers proceeded to Prewara's home. When they arrived, Prewara's mother answered the door and admitted them. They found Prewara in bed with the lights off wearing a pair of jeans but no shirt or shoes. One side of Prewara's face was swollen, and he had blood on his face and chest. Officer Ridge told Prewara that he needed to come to the station with them, and Prewara indicated that he would. The officers explained their presence to Prewara's mother, and after she was informed of Prewara's *Miranda*[2] warnings, she gave permission for the officers to question Prewara at the station; she did not accompany her son.

Prewara arrived at the police station at about 1:45 a.m. and remained handcuffed in an office for approximately one hour. When Officer Ridge entered the room at about 2:50 a.m., he removed Prewara's handcuffs and read Prewara his *Miranda* rights from a card. Prewara answered "yes" when asked if he understood the warnings after each had been read. During the interview, Prewara initially denied any wrongful conduct. When questioning intensified, however, he admitted that he stuck his finger in the baby's vagina and covered her mouth with his mouth because he "wanted to get the dust out of it." He said he touched her vagina with his mouth and his penis. Although some of Prewara's answers to questions were nonsensical, he never asked for the interview to be stopped, nor did he request the presence of a lawyer or parent. The interview lasted about twenty minutes.

Prewara subsequently was charged by a juvenile petition with two counts of gross sexual assault, 17–A M.R.S.A. § 253(1)(B) (Supp.1996) (Class A), one count of unlawful sexual contact, 17–A M.R.S.A. § 255(1)(C) (Supp.1996) (Class C), and one count of assault, 17–A M.R.S.A. § 207 (1983 & Supp. 1996) (Class D). Prewara filed a motion to suppress the statements he made during the interview with the police on the basis of

---

1. Prewara also appeals from the order entered in the District Court (Portland, *Beaudoin, J.*) binding him over to the Superior Court to be tried as an adult and from an order denying his motion to suppress. Assuming we can address Pre-

wara's contentions, we find no error or abuse of discretion as to either order.

2. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

hearing difficulties, his mental state, and the circumstances surrounding the interview. Following a hearing, the court denied the motion to suppress.[3]

The court granted a subsequent State's motion to have Prewara tried as an adult in the Superior Court. 15 M.R.S.A. § 3101(4) (1980 & Supp.1996). The court concluded that the "acts were aggressive, violent, willful and caused severe pain to the victim. The victim was only six months old at the time and was totally defenseless. The crimes were utterly senseless." The court found that although Prewara had poor insight and judgment, he displayed many adult qualities such as holding a job, owning cars, and taking care of himself. The court concluded that Prewara lacked remorse and an appreciation of the seriousness of his acts and determined that substantial doubt existed that two and one-half years of juvenile treatment could deter future criminality. *See* 15 M.R.S.A. § 3101(4)(D), (E). Prewara was indicted on the same four counts with which he had been charged in the juvenile petition. The Superior Court (*Brodrick, J.*) on March 24, 1993, denied Prewara's appeal from the bind-over order. On April 20, 1994, Prewara entered pleas of guilty to Counts I and II, the counts for gross sexual assault.[4]

The court imposed a basic period of incarceration of forty years on Count I and on Count II, ten years, to be served consecutively to Count I. The court suspended all but fifteen years on Count I and placed Prewara on probation for six years. The entire ten years on Count II was suspended, and the court imposed another probationary period of six years. Prewara's application for leave to appeal his sentence was granted on May 31, 1995. (Doc. No. SRP–95–29, *Glassman, J.*).

Pursuant to *State v. Hewey*, 622 A.2d 1151 (Me.1993), the court must first determine a *basic* period of incarceration based only on the nature and seriousness of the crime by comparing the crime to all possible means of committing that offense. Second, the trial court must consider any aggravating and mitigating circumstances particular to that defendant to determine the *maximum* period of incarceration. Third, the court may suspend a portion of the maximum period of incarceration to determine the *final* sentence. *Id.* at 1154–55. We review the basic period of incarceration for misapplication of principle. *State v. Wood*, 662 A.2d 908, 913 (Me.1995); *State v. Hewey*, 622 A.2d at 1155.

> [R]ecognizing the trial court's superior posture for evaluating evidence of the circumstances of the offender, [however,] we accord greater deference to the weight and effect given by the court to those factors peculiar to a particular offender in its determination of the offender's *maximum* period of incarceration. This greater deference is also accorded the court's determination whether to suspend any portion of that maximum period in arriving at the *final* sentence imposed on the offender by the court.

*Id.* at 1155. (emphasis in original). The necessity of clearly applying the three-step process derives from the different levels of deference accorded to the trial court. We emphasized in *Hewey* that

> [b]ecause of the different standards applicable in our review of the sentencing process, the desirability of a clear articulation by the trial court of its compliance with the three-step procedure becomes apparent. This articulation will aid us not only in distinguishing and applying the appropriate standard of appellate review ... but it will also facilitate a greater degree of uniformity in the sentencing process.

*Id.* at 1155. *See also* 17–A M.R.S.A. § 1151(5) (1983) (reciting purpose of eliminating inequality in sentencing that is unrelated to legitimate criminological goals).

*I. The basic periods of incarceration*

Prewara first attacks the propriety of the basic period of incarceration of forty years on Count I, and by extension, the ten years on

---

3. Prewara's motion to suppress also was heard anew and denied in the Superior Court (*Lipez, J.*).

4. Counts III and IV, containing the charges of unlawful sexual contact and assault, were dismissed.

Count II. In determining the basic period of incarceration, the "trial court must compare the conduct of [the defendant] on a scale of seriousness against all the possible means of committing gross sexual misconduct, and conclude that it ranks at or near the top of that scale." *State v. Michaud*, 590 A.2d 538, 542 (Me.1991). "Only if the offense is among 'the most heinous and violent crimes that are committed against a person,' is the maximum statutory sentence available for a Class A offense increased from twenty to forty years." *State v. Babbitt*, 658 A.2d 651, 653 (Me.1995) (citing *State v. Lewis*, 590 A.2d 149, 151 (Me.1991) (citations omitted)). "Close-to-maximum sentences for sexual assaults are inappropriate in cases that involve neither a weapon, nor a heightened degree of violence, injury, torture, or depravity." *State v. Clark*, 591 A.2d 462, 464 (Me.1991).

■ The horrific nature of the conduct in this case, as well as the injury to a child victim of such tender age, justifies a basic period of incarceration of forty years on Count I. *See* 17–A M.R.S.A. § 1151(8)(A) (1983 & Supp.1996) (age of victim is a factor to be considered in imposing sentence). Prewara exposed his genitals and inserted his penis into a six-month old child. The injuries to the child's vaginal area were potentially fatal had she not been found, and her infancy rendered her completely helpless during the ordeal. Prewara committed a savage, heinous, and depraved act. The court that bound Prewara over to be tried as an adult described Prewara's acts as "aggressive, violent, willful ... caus[ing] severe pain to the victim ... [, and] utterly senseless." Although worse sexual assaults are not beyond the realm of imagination, hypothesizing what might constitute more gruesome "possible means of committing gross sexual misconduct" belies reality. Here, the degree of

violence committed on a defenseless infant supports the imposition of a forty-year basic period of incarceration by the trial court as to Count I. Performing oral sex on a six-month-old child and biting the child's genitals justifies a basic period of incarceration of ten years on Count II. Neither basic period of incarceration is a misapplication of principle.

## II. Consecutive sentences

■ A court may impose consecutive sentences pursuant to 17–A M.R.S.A. § 1256(2) (1983 & Supp.1996).[5] In this case, the court determined that consecutive sentences were appropriate. We review a decision to impose consecutive sentences only for an abuse of discretion. *State v. Ilsley*, 604 A.2d 17, 19 (Me.1992).[6]

■ Consecutive sentences are appropriate for conduct involved in a single criminal episode or in multiple criminal episodes when that conduct is "unusually serious." *State v. Walsh*, 558 A.2d 1184, 1188 (Me.1989); *see State v. Brooks*, 634 A.2d 1265, 1267 (Me. 1993) (consecutive sentences proper for drug sales to minor students in proximity to school). The court in this case concluded both that the severity of the conduct and the separate nature of the criminal acts justified imposing consecutive sentences.

■ The court did not abuse its discretion in imposing consecutive sentences. Prewara had sexual intercourse with a six-month-old child and then bit the infant's vagina. His conduct was violent, heinous, and depraved. The court's finding that the crimes here were unusually serious ways to commit gross sexual misconduct was not clearly erroneous or a misapplication of law. *See State v. Brooks*, 634 A.2d at 1267 (court's determination of seriousness within meaning of section 1256(2)(D) reviewed for clear error or misap-

---

5. Section 1256(2) provides that consecutive sentences may be imposed when factors such as the following exist:

   A. That the convictions are for offenses based on different conduct or arising from different criminal episodes;

   ... or

   D. That the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the con-

victed person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

6. In imposing consecutive sentences, however, "the discretion can be exercised only if one of the factors listed in section 1256(2) is present." *Id.* " 'The court's determination as to the presence of those factors is reviewed for clear error.' " *Id.* (citations omitted).

plication of law). The court acted in its discretion in imposing consecutive sentences.[7]

### III. The maximum periods of incarceration and final sentences

■ Although the court acknowledged the necessity of applying the three-step *Hewey* procedure and correctly arrived at basic periods of incarceration, the record discloses that the court insufficiently distinguished between the maximum periods of incarceration and the final sentences. The court was well aware of certain mitigating circumstances present in this case. The court, however, only mentioned those mitigating circumstances in determining the *final* sentences, i.e., what portion of the sentences to suspend. The court must address and separately impose maximum periods of incarceration for each offense. In doing so, the court is required to consider the mitigating as well as the aggravating circumstances particular to the defendant. *State v. Hewey*, 622 A.2d at 1154. Insistence in following this procedure will make review of sentences by this Court

more meaningful and should result in sentences that are more uniform.[8]

The record demonstrates that the court was aware of the *Hewey* procedure and was fully cognizant of the circumstances attendant to this defendant. Further, the court properly considered those circumstances, including the need to protect the public, in arriving at the *final* sentences and imposing lengthy periods of probation. Although the court may have considered the mitigating circumstances prior to arriving at the final sentences, the record does not reveal that the court did so, and " 'the defendant is entitled to a decision from us based on the record.' " *State v. Pelletier*, 534 A.2d 970, 972 (Me.1987) (quoting *State v. Gribbin*, 360 A.2d 517, 518 (Me.1976)). Missing from an otherwise careful, thoughtful, and well reasoned sentencing was the separate consideration of appropriate maximum periods of incarceration. The integrity and legitimacy of legal rules necessarily depends on their observance and endorsement by our courts. The failure to articulate separate maximum periods of incarceration with full consideration of both the aggravating and mitigating circumstances re-

7. We reiterate that "consecutive sentencing, when considered in light of the maximum periods of incarceration imposed, may result in sentences being excessive." *State v. Cloutier*, 646 A.2d 358, 362 n. 8 (Me.1994) (citing *State v. Frechette*, 645 A.2d 1128, 1129 (Me.1994)) (forty-year sentence on arson count consecutive to concurrent sentences of forty years excessive). In the particular circumstances of this case, however, we find that the sentences are not excessive.

8. The Legislature recognized the benefits of the *Hewey* factors being considered by the court in sentencing and has codified them as follows:

§ 1252–C. Sentencing procedure relating to the imposition of imprisonment.

In imposing a sentencing alternative pursuant to section 1152 that includes a term of imprisonment relative to murder, a Class A, Class B or Class C crime, in setting the appropriate length of that term as well as any unsuspended portion of that term accompanied by a period of probation, the court shall employ the following 3–step process:

1. The court shall first determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender.

2. The court shall next determine the maximum period of imprisonment to be imposed by

considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case. These sentencing factors include, but are not limited to, the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest.

3. The court shall finally determine what portion, if any, of the maximum period of imprisonment should be suspended and, if a suspension order is to be entered, determine the appropriate period of probation to accompany that suspension.

17–A M.R.S.A. § 1252–C (Supp.1996). The Legislature noted the importance of this process in its Statement of Fact:

This bill enacts into positive law the Law Court's 3–step sentencing procedure for felonies, established in *State v. Hewey*, 622 A.2d 1151, 1154–55 (Me.1993), when imposing a sentencing alternative involving a term of imprisonment. *See also State v. Roberts*, 641 A.2d 177, 179 (Me.1994). The Maine Revised Statutes, Title 17–A section 253, subsection 6 reflects a current statutory recognition of this critical process.

L.D. 542, Statement of Fact (117th Legis.1995). For a correct application of the *Hewey* procedure, see *State v. Roberts*, 641 A.2d 177 (Me. 1994).

quires that we vacate the sentences and remand the matter for resentencing.

The entry is:

Judgments affirmed. Sentences vacated. Remanded for resentencing in accordance with the opinion herein.

All concurring.