2011 ME 67

**STATE of Maine**

v.

**Theodore S. STANISLAW.**

Supreme Judicial Court of Maine.

Argued: Feb. 9, 2011.
Decided: June 7, 2011.

468–69 (Me.1994), but the motion was mooted by the court's entry of a final judgment.

Glen L. Porter, Esq. (orally), Ryan P. Dumais, Esq., Eaton Peabody, Bangor, ME, for Theodore S. Stanislaw.

Michael E. Povich, District Attorney, Mary N. Kellett, Asst. Dist. Atty., William B. Entwisle, Asst. Dist. Atty. (orally), Ellsworth, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Theodore S. Stanislaw appeals from the sentence imposed by the Superior Court (Hancock County, *Cuddy, J.*) following his guilty plea to three counts of unlawful sexual contact (Class B), 17–A M.R.S. § 255–A(1)(E–1) (2010); one count of unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E) (2010); one count of unlawful sexual touching (Class D), 17–A M.R.S. § 260(1)(C) (2010); and four counts of assault (Class D), 17–A M.R.S. § 207(1)(A) (2010). Stanislaw contends that (1) the court erred in applying the three-step sentencing analysis mandated by *State v. Hewey,* 622 A.2d 1151 (Me.1993), and codified at 17–A M.R.S. § 1252–C (2010); (2) the court abused its discretion by imposing consecutive sentences for the Class B convictions pursuant to 17–A M.R.S. § 1256(2)(A), (D) (2010); and (3) his overall sentence is excessive. Because we agree with Stanislaw that the court failed to undertake the analysis required by the first step of the sentencing procedure, we vacate the sentences imposed for the felony convictions. We do not address his remaining contentions, except to note that the sentencing court must undertake the statutorily imposed sentencing analysis for any primary sentence to be imposed for a felony conviction that will be consecu-

tive to another sentence. The statutory sentencing analysis need not be undertaken with respect to sentences for felony convictions that are imposed to run concurrently with the initial sentence or with a primary consecutive sentence.

## I. BACKGROUND

[¶ 2] From 2002 to 2008, on multiple occasions, Stanislaw engaged in sexual touching and sexual contact with five girls who were between the ages of ten and fourteen years old. At the time, Stanislaw resided in Blue Hill and provided music lessons to the girls. After one of the girls disclosed Stanislaw's actions to a family member, the State began to investigate him.

[¶ 3] Stanislaw was eventually charged with three counts of unlawful sexual contact (Class A), 17–A M.R.S. § 255–A(1)(F–1) (2010); four counts of unlawful sexual contact (Class B), 17–A M.R.S. § 255–A(1)(E–1); four counts of unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E); one count of unlawful sexual touching (Class D), 17–A M.R.S. § 260(1)(C); one count of sexual abuse of a minor (Class D), 17–A M.R.S. § 254(1)(F) (2010); and six counts of assault (Class D), 17–A M.R.S. § 207(1)(A). The State agreed to dismiss the Class A offenses, one Class B charge, three Class C charges, the sexual abuse of a minor offense, and two of the assault charges, in exchange for Stanislaw's plea of guilty to the remaining nine counts: three counts of Class B unlawful sexual contact;[1] one count of Class C unlawful sexual contact;[2] four counts of Class D assault; and one count of Class D unlawful sexual touching.[3]

[¶ 4] The court accepted Stanislaw's open guilty pleas to the charges, and conducted a sentencing hearing on January 27, 2010.[4] The State submitted a sentencing memorandum that included four examples of what it argued were "[c]omparable sentences in Hancock County." On each of the three Class B offenses for unlawful sexual contact, the court sentenced Stanislaw to nine years of imprisonment, to be served consecutively, and ordered that he comply with sex offender registration and notification requirements. For the Class C unlawful sexual contact conviction, the court imposed three years of imprisonment, with all but one year suspended, to be served consecutively to the Class B offenses, and four years of probation. The court also sentenced Stanislaw to thirty days in jail, to be served concurrently, and a $300 fine for each of the assault charges, and a thirty-day concurrent sentence for unlawful sexual touching. Thus, Stanislaw was ordered to serve a total of twenty-eight years in prison, followed by four years of probation, during which he was at risk for serving an additional two years. We granted Stanislaw leave to appeal his

1. Each of the three Class B charges alleged that Stanislaw, who was born in 1958, intentionally subjected a child who was younger than twelve years old to sexual contact in 2004 and 2005, in violation of 17–A M.R.S. § 255–A(1)(E–1) (2010).

2. This Class C charge alleged that Stanislaw, who was born in 1958, intentionally subjected a child who was younger than fourteen years old to sexual contact on one occasion in 2007, in violation of 17–A M.R.S. § 255–A(1)(E) (2010).

3. This Class D charge alleged that Stanislaw, who was born in 1958, intentionally subjected a child who was younger than fourteen years old to sexual touching on one occasion in 2007, in violation of 17–A M.R.S. § 260(1)(C) (2010).

4. The court sentenced Stanislaw on January 27, 2010, after the hearing. The court amended its sentence on January 28, 2010, and those amendments are included in the description of his sentence.

sentence pursuant to 15 M.R.S. § 2152 (2010) and M.R.App. P. 20.

## II. DISCUSSION

[¶ 5] Stanislaw avers that, in imposing its sentence for the Class B offenses, the court misapplied the three-step sentencing analysis codified at 17-A M.R.S. § 1252-C. Specifically, Stanislaw contends that the court erred in setting the basic period of incarceration at nine years because the court did not consider other possible means of committing the same crimes.[5]

[¶ 6] We review the sentencing court's determination of the basic period of incarceration for "misapplication of principle." *State v. Dwyer*, 2009 ME 127, ¶ 35, 985 A.2d 469, 479; *cf. State v. Lewis*, 1998 ME 83, ¶ 9, 711 A.2d 119, 123 ("We review the basic period of imprisonment *de novo* . . . .").

[¶ 7] We announced a three-part system of analysis nearly two decades ago in *Hewey*, 622 A.2d at 1154–55, and the Legislature adopted that framework in 1995 by codifying it at 17-A M.R.S.A. § 1252-C (Supp.1995). P.L.1995, ch. 69, § 1 (effective Sept. 29, 1995); *see also State v. Pre-*

*wara*, 687 A.2d 951, 955 n. 8 (Me.1996). Section 1252-C establishes a system intended to allow trial courts to craft sentences that are based on a thorough consideration of all pertinent information. *See State v. Sweet*, 2000 ME 14, ¶¶ 10–11 & n. 2, 745 A.2d 368, 371–72; *see also* 17-A M.R.S. § 1151 (2010) (identifying the purposes of criminal sentencing in Maine). By following the framework found in section 1252-C, the sentencing court can focus its analysis in a way that permits use of its discretion to both "appropriately individualize each sentence" and "facilitate a greater degree of uniformity in the sentencing process." *Hewey*, 622 A.2d at 1154–55 (quotation marks omitted). When sentencing courts follow this procedure, it also "make[s] review of sentences by this Court more meaningful and should result in sentences that are more uniform." *Prewara*, 687 A.2d at 955.

[¶ 8] In order to comply with the statutory requirements of section 1252-C, each time a court imposes a felony sentence it "shall first determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender."[6]

---

**5.** Stanislaw also argues that the court erred by failing to undertake the second and third steps of the sentencing analysis entirely. *See* 17-A M.R.S. § 1252-C(2), (3) (2010). We review a sentencing court's determination of the maximum period of incarceration and the final sentence imposed on a defendant for an abuse of discretion. *State v. Downs*, 2009 ME 3, ¶¶ 22, 26, 962 A.2d 950, 956; *cf. State v. Hewey*, 622 A.2d 1151, 1155 (Me.1993) (stating that a sentencing court's determination of the maximum and final sentences is entitled to "considerable deference"). Because we conclude that the court misapplied principle in arriving at the basic period of incarceration in this case, and that error necessarily affected the remainder of the court's sentencing analysis, we express no opinion about the court's determination of the maximum and final sentences. Nor do we address Stanis-

law's claim that the unsuspended twenty-eight-year period of imprisonment, resulting from the court's imposition of consecutive sentences, is excessive because it was more than three times greater than any of the comparable Hancock County sentences cited by the State at the sentencing hearing. *See Downs*, 2009 ME 3, ¶ 29, 962 A.2d at 957 (observing that a sentencing court's determination of the overall sentence is reviewed for an abuse of discretion).

**6.** For the Class C unlawful sexual contact conviction, the court sentenced Stanislaw to three years of imprisonment, with all but one year suspended, and ordered that this sentence be served consecutively to the three Class B offenses. Because the court imposed consecutive sentences, it was required to conduct a separate sentencing analysis for each

17-A M.R.S. § 1252-C(1); *see also Sweet*, 2000 ME 14, ¶ 11, 745 A.2d at 372; *Hewey*, 622 A.2d at 1154. The sentencing court determines the basic period of incarceration "by examining the crime, the defendant's conduct in committing it, and by looking at other sentences for similar offenses." *State v. Dalli*, 2010 ME 113, ¶ 6, 8 A.3d 632, 635 (quotation marks omitted); *see also State v. Ardolino*, 1997 ME 141, ¶ 24, 697 A.2d 73, 81 (stating that the sentencing court is to consider the defendant's conduct in light of "the basic period of incarceration imposed for similar conduct of other offenders convicted of offenses within the same classification");[7] *State v. Bolduc*, 638 A.2d 725, 727 (Me. 1994). This process requires the court "to measure the defendant's conduct on a scale of seriousness against all possible means of committing the crime in order to determine which acts deserve the most punishment." *State v. Berube*, 1997 ME 165, ¶ 3, 698 A.2d 509, 511 (quotation marks omitted).

[¶ 9] In other words, the sentencing court must begin its analysis by considering the offense itself, in as objective a manner as possible. *See State v. Shulikov*, 1998 ME 111, ¶ 23, 712 A.2d 504, 511 (stating that the considerations in the first step "focus[ ] on the *objective* nature of the offender's conduct"); *cf.* 17-A M.R.S. § 1252(5-B) to (5-D) (2010); *State v. Pfeil*, 1998 ME 245, ¶ 16, 720 A.2d 573, 577-78

(reciting that, in the first step, a court may consider "objective facts regarding the victim," but not the subjective effect of the crime on the victim (quotation marks omitted)). The court should also consider "the very highest sentence and the very lowest sentence available at law," and should "be aware of factors that would change the class of the crime." *Sweet*, 2000 ME 14, n. 3, 745 A.2d at 372. Aggravating and mitigating factors, external to the objective facts of the crime itself, are addressed at the second step of the sentencing analysis. 17-A M.R.S. § 1252-C(2); *see also Hewey*, 622 A.2d at 1154-55. Consideration of aggravating factors may significantly increase the basic term of imprisonment determined in the first step, and may result in a maximum sentence, set in the second step, that is well above the basic sentence but within the statutory limit for the offense at issue. *See Hewey*, 622 A.2d at 1154-55.

[¶ 10] In this case, the court set the basic term of imprisonment at nine years for each of the Class B unlawful sexual contact offenses. The court's explanation of its reasons for setting the nine-year sentence appears to combine issues relating to the objective facts of the crime, appropriate for consideration at the first step of the sentencing analysis, with aggravating factors, such as a prior conviction for a similar offense, the betrayal of trust held by the community, and the great

---

of the Class B convictions, and for the Class C conviction. *See Downs*, 2009 ME 3, ¶ 14, 962 A.2d at 954-55. Accordingly, the court must also address this issue on remand.

7. By considering sentences imposed on defendants who were convicted of similar conduct, courts could attempt to "eliminate inequalities in sentences that are unrelated to legitimate criminological goals." 17-A M.R.S. § 1151(5) (2010); *see also State v. Reese*, 2010 ME 30, ¶¶ 17-18, 991 A.2d 806, 813-14. However, because of the multiple variables in

conduct and process that may impact a particular sentence, the Judicial Branch does not have the technological capacity to maintain the sentencing statistics that would support this endeavor. The most recent comprehensive study reported sentences imposed by the Superior Court in 1997. Hons. Howard H. Dana Jr. & Leigh I. Saufley, Sentencing Statistics for All Crimes Charged in Fiscal Year 1997 in All Superior Courts in the State of Maine (2001) (on file with the Nathan & Henry B. Cleaves Law Library).

number of criminal acts committed over a five- or six-year period, which are appropriate for consideration in the second step of the sentencing analysis. Before announcing that it would use nine years as the basic period of incarceration for each of the Class B offenses here, the court stated that it was "impressed simply by [Stanislaw's] conduct and the impact it has had on the victims here." Thereafter, the court recited:

> The Court views the facts here, as admitted by this defendant, to be among the more serious offenses that could be committed in this situation, as it impacts on the young lady victims. The Court feels that an appropriate starting point, in terms of a basic term of imprisonment for each of the nine-year—each of the Class B felonies, is a period of nine years. And this—so it's unabashedly clear to everybody in this room, my thought is, quite frankly, sir, to separate

you as long as the [L]egislature permits me to, from this community in Hancock County.

[¶ 11] The recitation includes references to the impact Stanislaw's crimes had on his victims, and to the court's apparent determination that Stanislaw's chances for rehabilitation were limited. Although those factors may ultimately be considered by a court during its sentencing deliberation, if the court considers them at the first step of the process, it will have failed to calculate a basic period of incarceration "based solely on the nature and seriousness of the offense." *Sweet*, 2000 ME 14, ¶ 11, 745 A.2d at 372; *see also Hewey*, 622 A.2d at 1154. The record demonstrates that the court did not focus on the objective nature of Stanislaw's conduct in the first step of its analysis; nor did the court refer in any way to sentences imposed for similar offenses.[8]

---

8. Although a court's consideration of sentences imposed for similar offenses is not limited by the information presented at the sentencing proceeding, the State had presented four sentences that it deemed "[c]omparable." In the first matter, the court sentenced the defendant to three consecutive terms of imprisonment following trial: fifteen years of incarceration, with all but eight years suspended, and ten years of probation; eight years of imprisonment, all suspended, and six years of probation; and fifteen years of imprisonment, all suspended, and ten years of probation. In light of the suspended portion of his sentences, the defendant received a total of eight years of incarceration, with thirty years suspended, and twenty-six years of probation. That defendant had engaged in sexual misconduct with four victims and was convicted of several crimes in 2002 ranging from Class A to D offenses, including the offense of unlawful sexual contact. The State presented no information about the age of the victims. In the second comparable, from 2004, the defendant was convicted after trial of Class B unlawful sexual contact and seven counts of Class C unlawful sexual contact involving a nine-year-old victim. For the Class B offense, the defendant received eight years of imprisonment, with all but four years suspended, and four years of probation, and also received a consecutive sentence of two-and-a-half years, all suspended, with one year of probation, for each of the Class C convictions. The third comparable involved a defendant who, after trial in 2006, was convicted of Class B unlawful sexual contact, for which he received a sentence of seven years, with all but three years suspended, and twelve years of probation, and who was also convicted of two counts of Class D assault, for which he received consecutive eleven-month sentences, all suspended, and one year of probation. The case involved two victims, but the ages of the victims were not reported. The fourth comparable provided by the State involved the imposition of a sentence of seven years of imprisonment, with all but three years suspended, and eight years of probation following a trial in 2008 where the defendant was convicted of one count of Class B unlawful sexual contact involving a five-year-old victim. The State also presented Stanislaw's 1982 felony conviction for sexual abuse in New York, demonstrating that, when Stanislaw was twenty-three years old, he committed a sexual act against a child who was less than eleven years old.

■ [¶ 12] By statute, the maximum sentence that could lawfully be imposed for any Class B unlawful sexual contact conviction involving a defendant with no prior convictions is ten years. *See* 17–A M.R.S. § 1252(2)(B) (2010). When a sentencing court determines that the basic period of incarceration is at or near the maximum sentence, it does not misapply principle so long as its analysis demonstrates that "the defendant's crime was considered to be among the most serious ways in which the crime might be committed." *State v. Hutchinson,* 2009 ME 44, ¶ 42, 969 A.2d 923, 935. In setting the basic period of incarceration at nine years here, the court failed to articulate why Stanislaw's crime "was considered to be among the most serious ways in which the crime might be committed." *Id.* As serious and terrible as Class B unlawful sexual contact offenses are, there are some factors that would support a higher basic sentence within the statutory maximum. Among those factors are the use of violence and/or threats of violence, selecting victims who may not be able to understand or articulate the harm done to them because of a mental or physical infirmity, and selecting extremely young children as victims.[9] None of the offenses for which Stanislaw was convicted contained any of those components.

[¶ 13] Because these components are not present, and the court failed to provide any rationale that could be considered at the first step of sentencing for its determination that Stanislaw's offenses war-ranted basic sentences just one year less than the maximum allowed, we are unable to review this determination in any meaningful fashion. Additionally, when a court sets the basic sentence at or near the statutory maximum without properly conducting the three-step analysis, it has no flexibility to set higher basic sentences in those cases that involve even more serious facts, will be unable to appropriately consider aggravating factors at the second step of sentencing in cases that warrant harsher sentences, and will be unable to create consistency in its sentences. For these reasons, it will be rare for a basic sentence, determined in the first step of the sentencing analysis, to be appropriately set at or near the statutory maximum.

[¶ 14] In Maine, judges still have considerable discretion in fashioning sentences. Although there are a growing number of legislatively-imposed minimum and mandatory sentences, *see e.g.,* 17–A M.R.S. § 1252(2), (4–E) to (5–A) (2010); 29–A M.R.S. § 2557–A(2) (2010), a judge tasked with imposing a sentence upon most felony convictions could, if the circumstances and mitigating factors warranted, impose a sentence with a minimal period of incarceration. Alternatively, judges are empowered to impose sentences of any period of incarceration up to thirty years for Class A crimes, ten years for Class B crimes, and five years for Class C crimes. *See* 17–A M.R.S. § 1252(2). Because there are multiple factors that must be considered in each case, including dif-

---

9. In *State v. Pfeil,* the defendant pleaded guilty to three counts of gross sexual assault, four counts of unlawful sexual contact, and two counts of assault. 1998 ME 245, ¶¶ 1–2, 720 A.2d 573, 575. In reviewing the sentencing court's determination that a ten- to fifteen-year range was the appropriate basic period of incarceration for the three Class A gross sexual assaults, we reasoned:

> Because there was no violence and no penetration, [the defendant's] conduct cannot be considered among the most serious ways of committing gross sexual assault, but neither can it be minimized consistent with the court's statutory duty to impose sentences that do not diminish the gravity of offenses, with reference to . . . [t]he age of the victim. *Id.* ¶ 17, 720 A.2d at 578 (quotation marks omitted).

ferences among defendants, victims, and circumstances, we have acknowledged that "[c]riminal sentencing is one of the most difficult responsibilities of a judge." *Sweet,* 2000 ME 14, ¶ 10, 745 A.2d at 371; *see also* D. Brock Hornby, *Speaking in Sentences,* Green Bag 2d, Winter 2011, at 147, 157 (recognizing that sentencing "is judges' most difficult duty" and involves "the heavy responsibility in judging another human being"); ABA Standards for Criminal Justice: Sentencing xviii (3d ed. 1994) ("Sentencing is the crux of the system of criminal justice."); Arthur W. Campbell, *Law of Sentencing* § 12:1 (2nd ed. 1991); James M. Burns, *Philosophy of Sentencing, in Sentencing* 1, 5 (The National Judicial College ed. 1978) (noting that sentencing "is such an awesome and difficult" task for a judge because of the competing purposes of sentencing). Every time a judge determines a sentence, he or she must exercise discretion "in a way that meets often competing goals." *Sweet,* 2000 ME 14, ¶ 10, 745 A.2d at 371. In addition to "addressing the many goals of sentencing," a sentencing court is tasked with creating "consistency among sentences for similar crimes and must, at the same time, tailor the sentence to the individual defendant." *Id.* ¶ 10, 745 A.2d at 372.

[¶ 15] Because the extent of a judge's discretion is so broad, and because the difficulty of the task makes it one that warrants precision and focus, the process used by the sentencing court to reach the sentence imposed must be explained to the sentencing court's audience, including the reviewing court. *See Hewey,* 622 A.2d at 1154 (adopting "a sentencing process by which the significant purposes and rele-

vant factors may be *articulated* by the trial court in an individual case" (emphasis added)); *see also Prewara,* 687 A.2d at 955–56. By explaining its process, the court demonstrates that it has considered "all of the information necessary and appropriate to the exercise of its discretion," and provides the parties and the public with information that may assist them in understanding the sentence. *Sweet,* 2000 ME 14, ¶ 10 & n. 2, 745 A.2d at 371–72. Articulation of the process is also the only method that allows for meaningful appellate review of the sentence.[10] *See Hewey,* 622 A.2d at 1155.

[¶ 16] The first step of the three-step analysis, which requires the court to set a basic period of incarceration by considering and then explaining where the crime falls within the range of all possible ways to commit the particular crime, may be particularly difficult in cases involving the victimization of children. When a sentencing court misapplies or avoids this important, statutorily mandated step, however, as the court did here, it is left without a foundation on which to build an appropriate sentence. Because the record does not demonstrate that the court objectively considered the nature and seriousness of the unlawful sexual contact offenses in determining the basic period of incarceration, we vacate the sentences and remand for resentencing.

The entry is:

Sentences vacated and remanded to the Superior Court for resentencing consistent with the opinion herein.

---

10. Articulation of the court's process is also important because we recognize that a transcript is a poor replacement for observing the presentation of evidence at trial, or listening to statements from the victims and their families, and watching the effect of those statements on the defendant.