2011 ME 92

**STATE of Maine**

v.

**Timothy BURNS.**

Supreme Judicial Court of Maine.

Submitted on Briefs:  June 1, 2011.
Decided:  Aug. 23, 2011.

Hunter J. Tzovarras, Esq., Hampden, ME, for Timothy Burns.

John M. Pluto, Asst. Dist. Atty., Caribou, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Timothy Burns appeals from a judgment of conviction entered by the Superior Court (Aroostook County, *Hunter, J.*) on one count of theft by unauthorized taking (Class C), 17–A M.R.S. § 353(1)(B)(4) (2007),[1] following a jury trial.[2] Burns also appeals from the sentence imposed by the court. Burns argues that (1) the court erred by not instructing the jury on the jurisdictional amount necessary to establish a Class C offense, (2) the evidence was insufficient to establish his guilt beyond a reasonable doubt, and (3) the court erred by sentencing him for a Class C offense. Because the jury rationally could have found from the evidence presented at trial that Burns was guilty of the theft of the check involved in this case, and the jury could only have found that the amount stolen was the amount of the check, we affirm the conviction. We also affirm the sentence.

## I. BACKGROUND

[¶ 2] During late 2006 and early 2007, Timothy Burns and Sara (Burns) Larson were married, but living separately, Larson in Auburn and Burns in Limestone. In February of 2007, they filed a joint tax return but, because Burns's tax refund went to his previously established child support obligations, Larson filed an injured spouse form to protect her portion of the refund from Burns's obligation. Larson submitted the tax return with Burns's permission, using her address in Auburn. In April of 2007, the Internal Revenue Service sent a refund check made payable to the order of "Sara E. Burns" in the amount of $3680.25, Larson's portion of the refund, to Burns's parents' address in Limestone. Burns lived at another address in Limestone, but he had mail sent to his parents' home and picked up the check there.

[¶ 3] When Larson did not receive the check, she called the IRS and learned that it had been sent. She then called Burns; he told her that he received the check and would hold it until their divorce was finalized. Larson contacted the police and filed a claim with the IRS, which resulted in her receiving another check in the full amount of the original check.

[¶ 4] The County Federal Credit Union processed the original check, which had two signatures and a number on it. The first signature appeared to say "Sara Burns," but Larson testified it was not her signature. The second signature belonged to Sharon Cannon, who Timothy Burns knew from work. Cannon testified that Burns asked her to cash the check, and she thought that Burns had already signed the check when he gave it to her. She also testified that she gave the money to Burns in two installments because the credit un-

---

1. The relevant statutory section provides:

    1. A person is guilty of theft if:

    A. The person obtains or exercises unauthorized control over the property of another with intent to deprive the other person of the property. Violation of this paragraph is a Class E Crime;

    B. The person violates paragraph A and:
    . . . .
    (4) The value of the property is more than $1,000 but not more than $10,000. Violation of this subparagraph is a Class C crime.

17–A M.R.S. § 353(1)(A), (B) (2007). This statutory section has since been amended, though that amendment is not relevant in the present case. P.L.2007, ch. 476, § 10 (effective June 30, 2008) (codified at 17–A M.R.S. § 353(1)(B) (2008)).

2. The jury found Burns not guilty of one count of forgery (Class C), 17–A M.R.S. § 703(1)(A–1)(2) (2007) (This paragraph has since been amended, though that amendment is not relevant in the present case. P.L.2007, ch. 476, § 26 (effective June 30, 2008) (codified at 17–A M.R.S. § 703(1)(A–1) (2008))).

ion did not let her withdraw the full amount immediately. When she went to the credit union later and was unable to get funds from her account, she was told that the check she cashed for Burns was bad. Burns testified at trial that he did not know about the check until Larson called him about it, but he told investigating officers that it had been stolen.

[¶ 5] Following a one-day trial, the jury found Burns guilty of theft (Class C), but returned a verdict of not guilty on the forgery charge. The court sentenced Burns to four years' imprisonment, all but eighteen months suspended, and two years of probation, and ordered him to pay restitution. Burns appealed from his conviction, and we granted him leave to appeal his sentence pursuant to 15 M.R.S. § 2152 (2010) and M.R.App. P. 20.

## II. DISCUSSION

### A. The Jury Instructions

[¶ 6] Burns argues that the court erred by failing to instruct the jury concerning the amount necessary to elevate a theft to a Class C offense. Because Burns did not object to the instructions, we review for obvious error affecting Burns's substantial rights. *See* M.R.Crim. P. 52(b); *State v. Nigro*, 2011 ME 81, ¶ 14, 24 A.3d 1283.

[¶ 7] A theft by unauthorized taking is a Class C offense when the property stolen is valued between $1000 and $10,000. 17–A M.R.S. § 353(1)(B)(4). In its instructions to the jury, the court defined theft as follows: "[A] person commits the crime of theft if they knowingly obtain or exercise unauthorized control over property owned by another person with the intent to deprive the owner of that property." The

court did not instruct the jurors that they needed to find that the value of the property taken was greater than $1000.[3]

[¶ 8] The value of the property taken is an element of a theft crime, *State v. Bruzzese*, 2009 ME 61, ¶ 10, 974 A.2d 311, and "[i]t is constitutionally mandated that every element of the crime charged must be proved beyond a reasonable doubt." *State v. McKeough*, 300 A.2d 755, 757 (Me.1973). Although the omission of the amount element from the jury instructions was erroneous, we may nonetheless conclude that it was harmless error if the record contains no evidence "that could rationally lead to a contrary finding with respect to the omitted element." *Neder v. United States*, 527 U.S. 1, 15, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (also concluding that the omission of an element of an offense is subject to harmless error analysis); *see also State v. Burdick*, 2001 ME 143, ¶ 30, 782 A.2d 319.

[¶ 9] Value is defined by statute: "The value of a written instrument that does not have a readily ascertainable market value, in the case of an instrument such as a check, . . . is deemed the amount due or collectible on the instrument. . . ." 17–A M.R.S. § 352(5)(B) (2010). Therefore, the value of the check in this case was $3680.25; nothing in the record supports a different finding as to the amount stolen. *See Burdick*, 2001 ME 143, ¶ 30, 782 A.2d 319 ("When the claimed error is the omission of a particular instruction, we will vacate the judgment only if the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." (quotation marks omitted)). Because the jury could not have rationally found from the evidence that

---

**3.** The court did include the amount element in its forgery instruction, stating, "[A] person is guilty of forgery if with the intent to de-

fraud or deceive another person, he utters a check in the amount of $1,000 or more."

Burns was guilty of theft of property with a value of less than $1000, we conclude that the instructional error was harmless.

## B. Sufficiency of the Evidence

[¶ 10] Burns next argues that even if the instructional error was harmless, the evidence was still insufficient for the jury to find that he had the intent to deprive Larson of the full value of the check. On a claim of insufficient evidence, we "view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally find every element of the offense beyond a reasonable doubt." *State v. Cook*, 2010 ME 85, ¶ 7, 2 A.3d 333 (quotation marks omitted).

[¶ 11] Burns argues that, at worst, the jury could have found that his intention was to hold the check until the divorce was final, not to permanently deprive Larson of the value of the check. However, even if Burns is correct, "intent to deprive" as used in 17–A M.R.S. § 353(1)(A) (2007) need not be intent to permanently deprive. *See* 17–A M.R.S. § 352(3) (2010).[4] Although a person charged with theft may have intended to repay or otherwise restore the stolen prop-

erty, that person may "nonetheless consciously use[ ] the money in a way which the jury could find made it unlikely that the [rightful owner] would recover it, in violation of section 352(3)(C)." *State v. Moon*, 2000 ME 142, ¶ 13, 755 A.2d 527. Here, the jury could have found beyond a reasonable doubt that Burns intended to deprive Larson of the value of the check to the point that a substantial portion of its value to her could be lost because of the delay in her receipt of the money. Burns's actions in first having Cannon cash the check and then spending some of the money would be inconsistent with the suggestion that Burns was merely holding the check until the divorce was finalized. *See Bruzzese*, 2009 ME 61, ¶ 12, 974 A.2d 311 (affirming conviction when the evidence established facts that were sufficient to support "a reasonable inference of guilt of Class C theft"). Accordingly, the evidence was sufficient to support Burns's conviction.

## C. Burns's Sentence

[¶ 12] Burns argues that he was sentenced above the statutory maximum penalty for the conduct for which the jury found him guilty.[5] We review the determination of the court's basic sentence de

---

4. The relevant statutory section provides:
  3. "Intent to deprive" means to have the conscious object:
  A. To withhold property permanently or for so extended a period or to use under such circumstances that a substantial portion of its economic value, or the use and benefit of the property, would be lost; or
  B. To restore the property only upon payment of a reward or other compensation; or
  C. To use or dispose of the property under circumstances that make it unlikely that the owner will recover it or that manifest an indifference as to whether the owner will recover it.
 17–A M.R.S. § 352(3) (2010).

5. Burns references *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in his argument. *Apprendi* held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. *Apprendi* implicates a sentence that is imposed beyond what would be allowed by the jury's verdict alone. In Burns's case, the court imposed a sentence consistent with the jury's verdict; the potential infirmity is with the relationship between the jury instructions and the verdict, not the relationship between the jury verdict and the sentence.

novo for misapplication of principle. *See State v. Robbins*, 2010 ME 62, ¶ 9, 999 A.2d 936.

[¶ 13] The court sentenced Burns in accordance with a conviction for a Class C crime, noting that its sentencing authority was up to five years. 17–A M.R.S. § 1252(2)(C) (2010). In step one of the sentencing analysis, the court determined that the basic sentence for Burns was twenty-two months: the check had a value of $3680.25, which the court calculated to be 37% of the difference between a Class C offense and a Class B offense, defined as theft of property valued over $10,000. *See* 17–A M.R.S. § 353(1)(B)(1) (2007). In setting the basic term of imprisonment, the court stated:

> [W]e're dealing with a Class C felony; and the Court's sentencing authority is a five-year span of time. Step one requires that we set the basic sentence looking at the offense. And this is often a difficult exercise for the Court to conduct. And in the view of many, not often grounded in any rational basis as the Court attempts to conceive of how one might commit theft or burglary or any other crime in some way, taking into account the entire realm of possible human behavior.
>
> But when we're dealing with theft, the Legislature gives us a classification system. And if you take from somebody else more than $1,000, well, then you're guilty of a Class C crime. And you're guilty of a Class B crime up to that point where you take $10,000. That's the point where you become responsible for a Class B felony. So, basically, you've got a span of anywhere up to $10,000 here leaves you in the realm of Class C criminal conduct. The amount of this income tax check was $3,680.25. According to my math, that's basically 37 percent of the total range. That

equates with a basic sentence of 22 months. And so the basic sentence will be tied to that, to that figure.

> And, again, it's a crime that was planned. It's a crime that's motivated by greed. I'm not aware of any circumstance suggesting that Mr. Burns was attempting to support a drug habit, and so I think tying it to the numbers is as viable and valid a basis as anything else. So, I'll set the basic sentence here on this Class C felony at 22 months.

[¶ 14] In step two, *see* 17–A M.R.S. § 1252–C(2) (2010), the court determined that there were no mitigating factors and that the following aggravating factors applied: failure to accept responsibility, impact on the victim, impacts on Cannon and the credit union, and Burns's criminal record. The court increased the basic sentence from twenty-two months to four years. The court found merit in placing Burns on probation, *see* 17–A M.R.S. § 1252–C(3) (2010), so the court ordered Burns to serve eighteen months of the four-year sentence and to make restitution to the credit union and Cannon.

[¶ 15] Because we conclude that the jury could not have rationally found that the value of the property stolen was less than $1000, the basic sentence was appropriately set based on a Class C conviction. *See Washington v. Recuenco*, 548 U.S. 212, 221, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (concluding that when the court not only fails to submit an element to the jury, but also "mistakenly conclude[s] that the jury's verdict was a complete verdict of guilt on the charges and imposed sentence accordingly[,]" the error was subject to harmless error analysis).

[¶ 16] We note, however, that although the court did not ultimately err in setting the length of the basic sentence, the percentage approach employed by the court, whereby the amount stolen was

considered in proportion to the statutory jurisdictional amounts, is not a proper consideration in the first step of the sentencing process. A sentencing court must set a basic period of incarceration "solely by reference to the offender's criminal conduct in committing the crime, that is, by considering the particular nature and seriousness of the offense without regard to the circumstances of the offender." *State v. Hewey*, 622 A.2d 1151, 1154 (Me. 1993) (quotation marks omitted) (emphasis omitted). The record must demonstrate that the court "objectively considered the nature and seriousness" of the offense in determining the basic period of incarceration in order to provide "a foundation on which to build an appropriate sentence." *State v. Stanislaw*, 2011 ME 67, ¶ 16, 21 A.3d 91. In a theft crime, the objective factors that the court considers may include whether the threat of force was used and whether the crime was committed in a way likely to result in confrontation. *State v. Downs*, 2007 ME 41, ¶ 11, 916 A.2d 210. The magnitude of the theft is a proper consideration, but the amount stolen should not be directly translated into a basic sentence by employing some manner of mathematical formula.

[¶ 17] At sentencing, Burns's counsel argued that the manner in which Burns committed the theft put the crime "essentially in the center" of the applicable zero to five-year range. In setting the basic period of incarceration, the court arrived at a term notably less than half the Class C maximum after considering not only the relative amount of the theft, but also the motivation for the crime in setting the basic sentence.[6] Because we agree that the manner in which Burns committed the theft—not solely the amount stolen—warrants a basic sentence in the middle of the Class C range, we find it unnecessary to disturb the sentence.

[¶ 18] Although we recently vacated a defendant's sentences when the court did not provide "any rationale that could be considered at the first step of sentencing," *Stanislaw*, 2011 ME 67, ¶ 13, 21 A.3d 91, in that case the court set the basic period of incarceration just one year below the maximum, which made it particularly difficult to appropriately compare the sentence to cases involving varying levels of severity. Additionally, in *Stanislaw* the sentencing court erred by using aggravating factors as well as the objective facts of the crime to set the basic sentence. *Id.* ¶ 10. Here, the court set the basic period of incarceration below the middle point of the range for Class C offenses as suggested by Burns, and although the court's reliance on a percentage approach based upon the amount stolen was misplaced, there were other reasons articulated at sentencing that appropriately supported setting the basic period of incarceration at twenty-two months.

The entry is:

Judgment and sentence affirmed.

---

6. Burns does not raise the court's percentage approach on appeal.