MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2025 ME 73
Docket:        SRP-24-198
Argued:        March 5, 2025
Decided:       August 7, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## JASON SERVIL

LAWRENCE, J.

[¶1]  Jason Servil appeals from a principal sentence of forty-five years of incarceration imposed as part of a judgment of conviction for murder (Class M), 17-A M.R.S. § 201(1)(A) (2025), and for aggravated assault (Class B), 17-A M.R.S. § 208(1)(B) (2025), entered by the trial court (Somerset County, *Mullen, C.J.*) after Servil pleaded guilty to both charges.  Because the court relied on impermissible information during sentencing and we cannot say that this error was harmless, we must vacate Servil's sentences.

## I.  BACKGROUND

[¶2]  The following facts are drawn from the procedural record.  *State v. Gordon*, 2021 ME 9, ¶ 2, 246 A.3d 170.

[¶3]  On July 18, 2022, Servil was charged by criminal complaint with murder, 17-A M.R.S. § 201(1)(A), and aggravated assault (Class B), 17-A M.R.S. § 208(1)(B).  The charges stemmed from Servil's repeated stabbing of his ex-girlfriend (the murder victim) with a knife, causing her death, and Servil's use of a crowbar to attack a man (the assault victim) who was with the murder victim.  On August 25, 2022, Servil was indicted by a grand jury for intentional, knowing, or depraved indifference murder, 17-A M.R.S. § 201(1)(A) & (B), as to the murder victim,[1] and aggravated assault (Class B), 17-A M.R.S. § 208(1)(B), as to the assault victim.

[¶4]  Servil and the State eventually reached a plea agreement, and the court held a Rule 11 hearing on January 17, 2024.  The parties agreed to a forty-five-year cap on the murder charge, with the understanding that Servil could argue for a lesser sentence.  The court accepted Servil's guilty pleas as to both charges and scheduled the sentencing hearing for April 12, 2024.

[¶5]  At the sentencing hearing, the court heard statements from the victim's grandfather, brother, sister-in-law, and mother.  The court also heard statements from a Department of Corrections Intensive Mental Health Unit

---

[1] Although there are two victims in this case, we refer to the murder victim as "the victim" for the remainder of this opinion in addressing the issues on appeal presented by the sentencing on the murder conviction.

employee who treated Servil after he was arrested, two members of Servil's family, and Servil himself.

[¶6]  The court engaged in the two-step sentencing analysis applicable to murder convictions.  *See State v. Waterman*, 2010 ME 45, ¶ 25 n.1, 995 A.2d 243; 17-A M.R.S. § 1602(2) (2025).  Under step one, the court determined a basic sentence of forty-five years of incarceration.  Under step two, the court assessed the aggravating and mitigating factors.  During this analysis, after requesting permission from the victim's family, the court read into the record the victim's obituary, which the court obtained on its own.  The court said that it found the obituary "very moving."  Afterward, the court stated that, because it did not find a significant difference in weight between the aggravating and mitigating factors,[2] the sentence should remain at forty-five years' incarceration.  The court also ordered a concurrent sentence of ten years' incarceration on the aggravated assault charge, and $2,320 in restitution.

---

[2] For aggravating factors, the court considered the subjective effect on the victim, the viciousness of the crime, the need to protect the public interest, and the defendant's volatility at the time of the offense.  For mitigating factors, the court considered Servil's lack of criminal record, his young age, his taking responsibility for the crime, his expressed remorse, and his background and struggles with mental health issues.

4

[¶7]   The court entered the judgment on April 23, 2024.  Servil timely filed an application for leave to appeal his sentence, and the Sentence Review Panel granted the application on July 31, 2024.  *See* M.R. App. 2B(b)(1), 20(b).

## II.  DISCUSSION

[¶8]   Servil argues that the court abused its sentencing discretion and violated his due process rights when it acquired the victim's obituary through its own independent research and then read it into the record.[3]  We need not reach Servil's due process argument because we agree that the court abused its discretion in its retrieval and use of the obituary, and we cannot say that the error was harmless.

---

[3] Servil raises two additional arguments on appeal.  First, he contends that the court violated his due process and first amendment rights by reading a psalm into the record during the sentencing hearing.  Because the court read the psalm during its closing remarks, after it had completed its analysis and imposed sentences on both charges, we conclude that the court's sentencing analysis was not based in any part on the psalm, and therefore the court did not err.  *See State v. Moore*, 2023 ME 18, ¶ 25, 290 A.3d 533 (explaining that a sentence may not be "*based in part*" on an impermissible consideration (emphasis added)).

Second, Servil argues that the court erred by concluding that 17-A M.R.S. § 1608 (2025) does not authorize consecutive sentences for his convictions, and consecutive sentences would have allowed for a period of probation tied to the aggravated assault charge.  We conclude that the court did not err in determining under section 1608(1)(A) that the convictions were not based on different conduct or criminal episodes that would authorize a consecutive sentence.  Even if the court had determined otherwise, the court still had no obligation to impose consecutive sentences under the discretionary language of section 1608(1).  *See* 17-A M.R.S. § 1608(1) ("The sentences must be concurrent except that the court *may* impose the sentences consecutively [if certain factors are met]." (emphasis added)); *see also State v. Ketcham*, 2024 ME 80, ¶ 41, 327 A.3d 1103.

[¶9]  "Criminal sentencing is one of the most difficult responsibilities" of a court. *State v. Sweet*, 2000 ME 14, ¶ 10, 745 A.2d 368.  "[S]entencing is such an awesome and difficult task for [the court] because of the competing purposes of sentencing."  *State v. Stanislaw*, 2011 ME 67, ¶ 14, 21 A.3d 91 (quotation marks omitted).  This is because multiple factors, such as the "differences among defendants, victims, and circumstances," must be considered in each case.  *Id*.  Within certain parameters, the court is given the discretion to fashion an individual sentence.  *Id*.  "Because it can be challenging in a given case to reconcile potentially disparate sentencing goals, the trial court is generally afforded significant leeway in determining which factors are considered and the weight a factor is assigned."  *State v. Watson*, 2024 ME 24, ¶ 22, 319 A.3d 430 (quotation marks omitted).

[¶10]  For similar reasons, courts also "are afforded wide discretion in determining the sources and types of information to consider when imposing a sentence*." State v. Butsitsi,* 2015 ME 74, ¶ 25, 118 A.3d 222 (quotation marks omitted).  However, there are limits on what information a sentencing court may rely on in its analysis.  *See, e.g.*, *State v. Moore*, 2023 ME 18, ¶¶ 25-27, 290 A.3d 533 (concluding that a defendant's decision to exercise his constitutional right to a jury trial may not be considered during sentencing); *State v. Ellis*, 2025

ME 56, ¶ 27, --- A.3d --- (explaining that a sentence may not be increased because a defendant asserted his right to a trial and his right not to testify). "We review the determination of the maximum sentence at step two for an abuse of discretion." *State v. Ketcham*, 2024 ME 80, ¶ 35, 327 A.3d 1103.

[¶11]   Here, the sentencing court first announced a basic sentence of forty-five years of incarceration under step one, and then explained how it would proceed in the second step of its analysis, stating: "This second step requires me to examine all relevant mitigating as well as aggravating factors relating to the character and criminal history of the defendant, [the] subjective effect of the crime on the victim, and the protection of the public interest."

[¶12]   After identifying the applicable mitigating factors in this case, the court began its consideration of aggravating factors by assessing the subjective effect on the victim.   The court explained that it thought this part of the sentencing process required it to gain some insight about the victim.   To that end, the court indicated that it "obtained a copy of the [victim's] obituary" and then read the obituary into the record.   After identifying and assessing other aggravating factors, the court found the aggravating and mitigating factors were about equal and thus set the maximum sentence at the same forty-five years' incarceration as the basic sentence.

[¶13] Although the court correctly addressed the subjective effect on the victim during step two of its analysis, *see* 15 M.R.S. § 2155(1) (2025), it also relied, in part, on the victim's obituary. The court read the obituary into the record while analyzing the "subjective effect on the victim," and specifically noted that the obituary "was very moving to me." This statement demonstrates that the obituary was a discrete and significant consideration in step two of the court's sentencing analysis, regardless of any overlap between the information in the obituary and the content of the victim impact statements submitted to the court. Moreover, the court also said during this step that it obtained the obituary on its own, and Servil's counsel confirmed that the State did not provide a copy of the obituary to Servil before the sentencing hearing. It is clear that given the court's comment that the obituary was "very moving," the court's analysis of the aggravating factors was affected by its independent research.

[¶14] Despite its laudable goal of thoroughly considering the "subjective effect on the victim" factor, the court's step-two sentencing analysis relied upon information from an extrajudicial source that was independently obtained, was not provided to the defense ahead of sentencing, and, by the court's requesting the family's permission to read it, appeared less than impartial. Although the court also referenced the multiple victim impact statements provided to the

court, that does not diminish the supervening impact of its reliance on the obituary in weighing the aggravating factor of victim impact as a part of the determination of Servil's maximum sentence. *See Moore*, 2023 ME 18, ¶ 25, 290 A.3d 533 ("A sentence based in part on an impermissible consideration is not made proper simply because the sentencing judge considered other permissible factors as well." (alterations and quotation marks omitted)); *see also Ellis*, 2025 ME 56, ¶ 28, --- A.3d ---.

[¶15]  Accordingly, we conclude that the court abused its discretion by incorporating, and potentially giving weight to, information obtained from its own independent research, and we cannot say that this error was harmless. Emphasizing that "[o]ur decision is a narrow one, limited to these extraordinary facts," *Evans v. State*, 2020 ME 36, ¶ 7, 228 A.3d 156, we vacate Servil's sentences and remand for resentencing before a different judge. *See id.* ¶¶ 6-7.

The entry is:

> Sentences vacated.  Remanded for resentencing
> before a different judge.

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for appellant Jason Servil

Aaron M. Frey, Attorney General, and Katie Sibley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Somerset County Unified Criminal Docket docket number CR-2022-764
FOR CLERK REFERENCE ONLY