STATE of Maine

v.

Mark F. CLARK.

Supreme Judicial Court of Maine.

Submitted on briefs March 4, 1991.
Decided May 13, 1991.

Michael P. Cantara, Dist. Atty., Jeffrey H. Moskowitz, Asst. Dist. Atty., Alfred, for plaintiff.

Jeffrey W. Langholtz, Biddeford, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, COLLINS and BRODY, JJ.

WATHEN, Justice.

Mark F. Clark appeals from his conviction after a jury trial in the Superior Court (York County, *Delahanty, C.J.*) on one count of gross sexual assault in violation of 17–A M.R.S.A. § 253 (Supp.1990), one count of unlawful sexual contact in violation of 17–A M.R.S.A. § 255 (Supp.1990), and one count of assault in violation of 17–A M.R.S.A. § 207 (1983 & Supp.1990), and from the sentence of imprisonment for

a term of thirty years imposed by the court on the first count. We affirm the convictions but vacate the sentence imposed by the court and impose a sentence of fifteen years.

## I.

The facts presented at trial may be summarized as follows: In the evening of October 5, 1989, the complaining witness, a 16-year-old high school student, was studying at the apartment of a school friend in Sanford. The complainant's sister had an apartment in the same building and defendant, a thirty-three-year-old male, boarded at that apartment. During the evening, defendant came into the complainant's presence and offered to walk her home when she left at 11:00 P.M. At first she refused, but, after defendant insisted, she agreed. The complainant testified that after stopping at Dunkin Donuts the two were walking along an unlighted area of High Street by some old mills, when defendant stopped and smoked a cigarette and urinated. He then grabbed the complainant around the throat and dragged her into a bushy, fenced-in area near the sidewalk. He forced her face-first to the ground, lying on top of her with his arms around her throat, then let her sit up. He unbuttoned her shirt and lifted her bra and started feeling her breasts. He told her to "lay down" and "shut up" or he was going to knock her out. He pulled down her pants and underwear, pulled out her tampon and set it to one side, and had sexual intercourse with her. He did not ejaculate. Eventually he let her go, and she walked home and told her mother she had been raped. A medical examination confirmed the absence of sperm or semen and revealed that the complainant sustained no physical injuries.

## II.

■ Contrary to Clark's assertions on appeal, the evidence was sufficient to allow the jury to find beyond a reasonable doubt that he was guilty of the offenses charged. *See State v. Barry,* 495 A.2d 825, 826 (Me. 1985). His arguments are addressed to issues of credibility that are the exclusive province of the jury. *See State v. Lovejoy,* 493 A.2d 1035, 1037–38 (Me.1985).

## III.

■ After lunch on the second day of the trial, defendant's counsel moved for a mistrial. He said that defendant had told him he had been "paraded" in shackles before three male jurors on the way back to the courtroom. The court thereupon held a conference in chambers. The transport officer, Robert Rondeau, told the court that defendant and a defense witness, Gary St. Laurent, had been brought into the courthouse in shackles and that he had seen one person, whom he presumed was a woman and whom he could not identify as a juror, sitting on the steps smoking at that time. After a discussion in which defendant's counsel said he did not want the jurors polled as to whether they had seen defendant in shackles, this colloquy occurred:

COURT: Why don't I do this, counsel. Why don't I ask the jurors if during the noon hour that any of them in and around the court house had an opportunity to be present when either the Defendant or any of the witnesses was coming or going from the court house.

MR. LANGHOLTZ: That would be ideal, your Honor.

When the trial resumed in open court, the court inquired of the jury:

COURT: Mrs. Kerry, ladies and gentlemen, before we go any further there is a question I would like to ask of the jury and that is if during the noon hour either going and coming from the Court house for lunch or returning to the Court house from lunch, if any of you had an opportunity to observe or speak with just in passing.

As I mentioned yesterday when you came into jury duty sometimes the facilities don't prevent accidental contact. Anybody have any opportunity to have contact with or observe any of the parties to this action or any of the witnesses including the Defendant. Anybody else who appeared?

(NO RESPONSE FROM THE JURORS)

COURT: Record shows no response. Anything further from the State at this time?

MR. MOSKOWITZ: No, your Honor.

COURT: Mr. Langholtz.

MR. LANGHOLTZ: Just call my witness, your Honor.

Defendant contends on appeal that the Superior Court should have granted his motion for a mistrial. Our review of a denial of a motion for mistrial is deferential:

> A motion for a mistrial is addressed to the sound discretion of the trial court, and we review a denial of the motion only for an abuse of that discretion.... The trial court should deny a motion for mistrial except in the rare case when the trial cannot proceed to a fair result and no remedy short of a new trial will satisfy the interests of justice. The determination by the trial court of whether the exposure to potentially prejudicial extraneous evidence incurably tainted the verdict of the jury stands unless clearly erroneous.

*State v. Mason*, 528 A.2d 1259, 1260 (Me. 1987) (citations omitted). Here, the court determined, by questioning the transport officer and by inquiring of the jury in a manner that defendant's counsel characterized as "ideal," that no exposure of the jury to the sight of defendant in shackles had occurred. Even if, as defendant suggests, such exposure would have been unfairly prejudicial, the court's determination that it did not occur was not clearly erroneous, and the court did not abuse its discretion in denying defendant's motion for a mistrial.

### IV.

■ Following a presentence investigation, the court sentenced defendant to imprisonment for a term of 30 years on the charge of gross sexual assault. Defendant argues on appeal that the sentencing court improperly failed to consider the goal of rehabilitation. His contention is without merit. Defendant has four prior burglary convictions, a probation violation, a conviction for endorsing a U.S. Treasury check, several misdemeanor convictions, and a long history of alcoholism. The sentencing court adequately considered defendant's prospects for rehabilitation, and committed no error in deciding, on the facts before it, that those prospects were outweighed by other factors. *See State v. Hallowell*, 577 A.2d 778, 791 (Me.1990).

■ Even though the issue is not raised on appeal, we must examine, on an obvious error basis, the propriety of defendant's sentence in light of the Legislature's decision to raise the maximum sentence for a Class A crime from 20 years to 40 years, effective July 1, 1989. *See* P.L.1987, ch. 808. We recently held that the Legislature created two discrete ranges of sentences for Class A crimes and that the expanded range from twenty to forty years was expected to affect only the close-to-maximum sentences given for "the most heinous and violent crimes committed against a person," *State v. Lewis*, 590 A.2d 149 (Me. 1991). This is not such a case. We do not minimize the serious nature of any sexual assault. The nature and relative seriousness of defendant's conduct, however, is determinative of the maximum sentence that may be imposed. *State v. Hallowell*, 577 A.2d 778, 781 (Me.1990). Close-to-maximum sentences for sexual assaults are inappropriate in cases that involve neither a weapon, nor a heightened degree of violence, injury, torture, or depravity. When defendant placed his hands around the throat of his victim, threatened violence, and removed her tampon, he committed a sexual assault that ranks high on the scale of seriousness. His conduct involved force, violence, and degradation beyond that which inheres in the offense itself. Comparing defendant's conduct against all the possible means of committing gross sexual assault, however, we cannot conclude that it ranks at or near the very top of that scale. *See State v. Michaud*, 590 A.2d 538 (Me.1991). The upper quadrant of the sentencing range is reserved for offenses that are accomplished, for example, with extreme violence and accompanied by serious

physical injury. Based on our knowledge of the typical sentence for cases involving conduct similar to that of defendant, we determine that a sentence of fifteen years is appropriate. Because the close-to-maximum sentence is not justified, the court erred in imposing a sentence in the expanded range of twenty to forty years.

The entry is:

Judgments of conviction affirmed.

Sentence for gross sexual assault amended by substituting therefor a sentence of fifteen years in the custody of the Commissioner of the Department of Corrections.

All concurring.