MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 43
Docket:       SRP-11-378
Argued:       June 13, 2012
Decided:      May 7, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
              JABAR, JJ.
Majority:     ALEXANDER, LEVY, SILVER, and JABAR, JJ.
Concurrence/
  Dissent:    SAUFLEY, C.J., and MEAD and GORMAN, JJ.


STATE OF MAINE

v.

THEODORE S. STANISLAW


SILVER, J.

[¶1]   Theodore S. Stanislaw appeals for a second time challenging the

sentence imposed by the trial court (Hancock County, *Cuddy, J.*) following his

guilty plea to three counts of unlawful sexual contact (Class B), 17-A M.R.S.

§ 255-A(1)(E-1) (2012), and one count of unlawful sexual contact (Class C),

17-A M.R.S. § 255-A(1)(E) (2012).[1]   He contends that the court erred in applying

the three steps of the sentencing analysis required pursuant to 17-A M.R.S.

§ 1252-C (2012), that the court abused its discretion in imposing consecutive

sentences on each of the counts, and that his overall sentence of twenty-seven

---

[1]   Stanislaw also pleaded guilty to four counts of assault (Class D), 17-A M.R.S. § 207(1)(A) (2012), and one count of unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C) (2012).   He has not appealed the sentences associated with the Class D convictions.

2

years in prison is excessive. We vacate the sentence because it is disproportionate to other sentences for similar crimes.

## I. BACKGROUND

[¶2] Stanislaw, now age 54, pleaded guilty in an open plea to sexual crimes involving five girls. The events took place between 2004 and 2008, and the victims were between ten and fourteen years old. His actions toward these girls involved a range of contact, but none of his actions constituted a 'sexual act' as that term is defined in 17-A M.R.S. § 251(1)(C) (2012).[2] His criminal conduct involved exposing himself, touching and kissing his victims, and walking in on his victims and hugging them while they were unclothed or only partially clothed. Some of the touching was skin to skin, some involved touching through clothing. The record includes no evidence that any touching involved penetration.

---

[2] Title 17-A M.R.S. § 251(C) (2012) defines a "sexual act" as follows:

   (1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other;

   (2) Any act between a person and an animal being used by another person which act involves direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; or

   (3) Any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by another person when that act is done for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.

A sexual act may be proved without allegation or proof of penetration.

[¶3]   Based on his contact with the first victim, he pleaded guilty to three counts of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1).  These acts occurred during the summers of 2004, 2005, and 2006, starting when the victim was ten years old.  The victim's family was friendly with the Stanislaw family and the girl helped care for Stanislaw's young son.  On one occasion Stanislaw exposed himself to her and placed her hand on his penis.  On another occasion, after she fell asleep at his house, he carried her to a bed and pressed his body, including his penis, up against her while they were clothed.  Stanislaw also allowed her to drive his motor vehicle in his driveway while she sat on his lap.  While the girl was sitting on his lap, Stanislaw reached under her clothing and touched her breasts and genitals.  This girl had been one of his piano students, but she had previously quit lessons because he had touched her leg and had sat uncomfortably close to her.

[¶4]  For his actions with the second victim, Stanislaw pleaded guilty to one count of unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(E) and one count of assault (Class D), 17-A M.R.S. § 207(1)(A) (2012).  The second girl, who was also his music student, was victimized beginning in 2007 when she was thirteen. Stanislaw touched her genitals three or four times through her clothes and at least once "French kissed" her during music lessons.  Additionally, once when

4

she complained of being cold after swimming, he removed her clothes and held her against him while he was naked.

[¶5]   Stanislaw pleaded guilty to three counts of assault (Class D), 17-A M.R.S. § 207(1)(A), based on contacts with his third and fourth victims.  He assaulted both of these girls, aged thirteen and fourteen, during 2008.  He kissed the third victim on the lips in an "adult manner" on at least five occasions.  On one occasion, he entered a bathroom where she was dressing and hugged her while she was half-naked and he was completely naked.  Stanislaw kissed the fourth victim on the mouth on one occasion and during music lessons regularly put his hand on her clothed thigh in a way that made her feel uncomfortable.

[¶6]   Finally, Stanislaw pleaded guilty to one count of unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C) (2012), for his conduct with his fifth victim.  This victim, who was twelve years old at the time of the offense, went to Stanislaw's residence to babysit his young son.  While she was there Stanislaw "touched her in a sexual manner" through her clothing.

[¶7]   Stanislaw has one previous felony conviction.  In 1982, when Stanislaw was twenty-four, he pleaded guilty in New York to Sexual Abuse 1st Degree for subjecting "a person less than eleven years old, to sexual contact, by fondling her vagina."  *See* N.Y. Penal Law § 130.65(3) (Consol. 2000 & Supp. 2012).  He was sentenced to five years' probation.

[¶8] For his offenses in Maine, Stanislaw was initially sentenced "to serve a total of twenty-eight years in prison, followed by four years of probation, during which he was at risk of serving an additional two years." *State v. Stanislaw*, 2011 ME 67, ¶ 4, 21 A.3d 91 (*Stanislaw I*). This overall sentence included three consecutive sentences of nine years of imprisonment on each of the Class B offenses. *Id.* On the Class C offense, Stanislaw was sentenced to three years of imprisonment, with all but one year suspended, to be served consecutively to the terms on the Class B offenses, followed by four years of probation. *Id.* The sentences on the Class D offenses were not at issue in the prior appeal, *see id.* ¶ 5, and are not at issue here. The court arrived at the sentences on each of the Class B offenses by first setting a basic term of imprisonment, pursuant to 17-A M.R.S. § 1252-C(1), of nine years out of the ten-year maximum authorized by 17-A M.R.S. § 1252(2)(B) (2012). *Stanislaw I*, 2011 ME 67, ¶ 10, 21 A.3d 91.

[¶9] On appeal, we concluded that we were unable to review how the court determined the basic sentence on the Class B offenses because the court appeared to have combined its analysis of the objective facts of the crime itself with its analysis of aggravating factors. *Id*. ¶¶ 10, 13. We did not consider whether the court abused its discretion as to the maximum sentence, pursuant to 17-A M.R.S. § 1252-C(2), or the final sentence, pursuant to 17-A M.R.S. § 1252-C(3), nor did

6

we consider whether the sentence was excessive. *Stanislaw I*, 2011 ME 67, ¶ 5 n.5, 21 A.3d 91.

[¶10]  On remand, the court held a hearing to resentence Stanislaw.  At step one of the sentencing analysis, the court set the basic sentence at six years on each of the three Class B convictions and two to three years on the Class C conviction, pursuant to 17-A M.R.S. § 1252-C(1).  The court found that the crimes as committed by Stanislaw were serious because they involved both unacceptable physical contact and a high likelihood of causing lasting emotional scars, but also found that the crimes were not committed in the most serious manner possible and therefore did not warrant the maximum basic sentence.

[¶11]  At step two of the analysis, which involves setting the maximum period of imprisonment considering all relevant aggravating and mitigating factors pursuant to section 1252-C(2), the court increased the three sentences on the Class B offenses to eight years, and increased the sentence on the Class C offense to four years.  The only mitigating factors the court found were that Stanislaw pleaded guilty, thereby sparing the victims from having to testify at trial, and that Stanislaw apologized to the victims and their families at the initial sentencing.  The court was not persuaded by the testimony of Stanislaw's psychotherapist on the issue of rehabilitation.  Aggravating factors listed by the court included Stanislaw's 1982 conviction for a similar crime, the effect of the crimes on the victims, and the

need for protection of the public interest, as provided in section 1252-C(2). The court noted that, given his prior conviction and his use of the trust of parents, the community, and his multiple victims as a tool to facilitate the crimes, Stanislaw is still at high risk of re-offending.

[¶12]  At step three of the sentencing analysis, which involves determining what portion of the sentence to suspend and the appropriate period of probation pursuant to section 1252-C(3), the court did not suspend any portion of the three eight-year Class B sentences.  The court did suspend one year of the four-year sentence it imposed for the Class C offense, and imposed a period of probation of four years.  The court noted that the reason for suspending part of the sentence was to provide for a period of supervision for the sake of public safety.

[¶13]  The court then turned to consider whether to impose consecutive sentences pursuant to 17-A M.R.S. § 1256(2) (2012).  The court concluded that a sentence for each Class B and Class C offense that was consecutive to the sentences for all other Class B and C offenses was justified because (1) the Class B offenses involved the same victim but different episodes; (2) the Class C conviction involved a different victim and different conduct from the Class B offenses; (3) the conduct was serious and committed in multiple episodes; and (4) Stanislaw was convicted of a sex crime in 1982.  On these grounds, the court found that a combined sentence of imprisonment in excess of the maximum

available for the most serious offense was needed to protect public safety. The court did not repeat the third step of the required sentencing analysis—determining whether a suspension of a portion of the sentence of imprisonment is required, 17-A M.R.S. § 1252-C(3)—after concluding that consecutive sentences should be imposed.

[¶14] In all, the court sentenced Stanislaw to twenty-eight years in prison, with all but twenty-seven years suspended, followed by four years of probation. We once again granted leave to Stanislaw to appeal his sentence, pursuant to 15 M.R.S. § 2152 (2012) and M.R. App. P. 20.

## II. DISCUSSION

[¶15] We review the propriety of a sentence pursuant to 15 M.R.S. §§ 2154, 2155 (2012) and the proportionality or excessiveness of a sentence pursuant to the Maine Constitution, article I, section 9 and 17-A M.R.S. § 1151(5) (2012). When determining a sentence, the sentencing court conducts a *Hewey* analysis, which is a three-step sentencing analysis codified at 17-A M.R.S. § 1252-C. *See State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993). First, the court "determine[s] a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender." 17-A M.R.S. § 1252-C(1). Second, the court "determine[s] the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors . . . ." 17-A M.R.S. § 1252-C(2).

Third, the court "determine[s] what portion, if any, of the maximum period of imprisonment should be suspended and, if a suspension order is to be entered, determine[s] the appropriate period of probation to accompany that suspension." 17-A M.R.S. § 1252-C(3).

[¶16]  In cases involving multiple offenses, the sentencing court must determine whether to impose consecutive or concurrent sentences, pursuant to 17-A M.R.S. § 1256(2).  Section 1256(2) provides that sentences ordinarily run concurrently, but the statute grants the sentencing court discretion to impose consecutive sentences upon consideration of several factors:

> [S]entences shall be concurrent unless, in considering the following factors, the court decides to impose sentences consecutively:
>
> **A.** That the convictions are for offenses based on different conduct or arising from different criminal episodes;
>
> . . .
>
> **D.** That the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the convicted person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

If the court decides to impose consecutive sentences for various convictions, it must perform a separate *Hewey* analysis for each conviction.  *State v. Downs*, 2009 ME 3, ¶ 14, 962 A.2d 950.  In order to ensure that its final sentence accurately reflects the court's determination of an appropriate sentence for multiple

offenses, a sentencing court should make its decision about concurrent or consecutive imposition before it undertakes the third step of the *Hewey* analysis.

[¶17]   When reviewing the sentencing court's application of the *Hewey* analysis we review the basic sentence de novo for misapplication of principle and we review the maximum sentence and the final sentence for an abuse of discretion. *Id.* ¶¶ 22, 23.   However, we review all three statutory steps for whether the sentencing court disregarded the relevant sentencing factors or abused its sentencing power.   *Id.*   Additionally, we review the imposition of consecutive sentences for an abuse of discretion.  *Downs*, 2009 ME 3, ¶ 29, 962 A.2d 950.

A.      Statutory Review of a Criminal Sentence

[¶18]  Our review of sentences is guided by statutorily mandated objectives, 15 M.R.S. § 2154, and factors, 15 M.R.S. § 2155.  *See State v. Reese*, 2010 ME 30, ¶ 21, 991 A.2d 806.   Section 2154 provides the following objectives for our sentence review:

> **1.  Sentence correction**.  To provide for the correction of sentences imposed without due regard for the sentencing factors set forth in this chapter;
>
> **2.   Promote respect for law**.   To promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process;
>
> **3.   Rehabilitation.**   To facilitate the possible rehabilitation of an offender by reducing manifest and unwarranted inequalities among the sentences of comparable offenders; and

**4. Sentencing criteria.** To promote the development and application of criteria for sentencing which are both rational and just.

Section 2155 lists two factors that we must consider when reviewing a sentence:

**1. Propriety of sentence.** The propriety of the sentence, having regard to the nature of the offense, the character of the offender, the protection of the public interest, the effect of the offense on the victim and any other relevant sentencing factors recognized under law.

**2. Manner in which sentence was imposed.** The manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based.

[¶19] The second factor, "[t]he manner in which a sentence is imposed," is reflected in virtually all of our sentencing jurisprudence. *See, e.g., State v. Schofield*, 2005 ME 82, ¶¶ 13-27, 895 A.2d 927 (considering how the facts used in sentencing were obtained); *State v. Whitten*, 667 A.2d 849, 852 (Me. 1995) (determining that a potentially unreliable letter could not be used in sentencing). "We look to whether the sentencing court disregarded the statutory sentencing factors, abused its sentencing power, *permitted a manifest and unwarranted inequality among sentences of comparable offenders*, or acted irrationally or unjustly." *Reese*, 2010 ME 30, ¶ 21, 991 A.2d 806 (emphasis added).

12

**B.     Application of the Three-Step Analysis to Multiple Sentences**

[¶20]  Stanislaw argues that the sentencing court violated the propriety of his sentence by misapplying principle when it imposed a six-year basic term of imprisonment on each of the Class B offenses.  Additionally, he argues that the court contravened our holding in *Stanislaw I*, 2011 ME 67, ¶ 8 n.6, 21 A.3d 91, by failing to conduct a separate sentencing analysis for each conviction before imposing the consecutive sentences.

[¶21]  For the first step of the *Hewey* analysis, the statute provides: "The court shall first determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender." 17-A M.R.S. § 1252-C(1).  The court examines the crime, the defendant's conduct in committing it, and, at its discretion, other sentences for similar offenses. *Stanislaw I*, 2011 ME 67, ¶ 8, 21 A.3d 91; *Reese*, 2010 ME 30, ¶ 28, 991 A.2d 806.  We noted in *Stanislaw I* that it is rare for a basic sentence to be set at or near the statutory maximum.  2011 ME 67, ¶ 13, 21 A.3d 91.

[¶22]  Six years is significantly less than the ten-year maximum period available for Class B crimes, pursuant to 17-A M.R.S. § 1252(2)(B).  This basic term appropriately reflects that some of the factors that could have supported a higher sentence were not present here.  *Stanislaw I*, 2011 ME 67, ¶ 12, 21 A.3d 91. However, the six-year term does reflect that the crimes committed were serious.

In arriving at this term, the court appropriately considered the age of the victims, pursuant to 17-A M.R.S. § 1151(8)(A) (2012).[3]  *See Reese*, 2010 ME 30, ¶ 18, 991 A.2d 806.  The court did not abuse its discretion or sentencing power, nor did it misapply principle in setting a basic term of six years on each of the Class B offenses.  *See* 15 M.R.S. §§ 2154(2), 2155(1); *Stanislaw I*, 2011 ME 67, ¶ 6, 21 A.3d 91; *Reese*, 2010 ME 30, ¶¶ 21-23, 991 A.2d 806.

[¶23]  After considering the first two steps[4] of the *Hewey* analysis, the court considered the factors provided 17-A M.R.S. § 1256(2) and imposed Stanislaw's sentences consecutively.  The court found, pursuant to section 1256(2)(A), that Stanislaw's conduct on each of the Class B convictions involved the same victim but different episodes and that his conduct on the Class C conviction involved a different victim and different conduct.  The court also found that the requirements of section 1256(2)(D) had been met.  Those findings are sufficient to indicate that the court conducted a separate analysis of each of the sentences that it imposed consecutively.  The court's process was deliberate and thorough.

---

[3]  Although the sentencing court did not go into detail regarding the specifics of each conviction, its consideration of ages and general conduct is sufficient to satisfy the requirement for individual analysis.

[4]  Stanislaw has not challenged the court's handling of the second step of the sentencing analysis.

14

C.    Whether the Overall Sentence Is Excessive

[¶24]  When consecutive sentences are imposed, the sentencing court must make a determination that the unsuspended portion of any consecutive sentence is not excessive and is proportionate to the offense.  Me. Const. art I, § 9.

[¶25]  In accordance with the statutorily mandated purposes of our sentence review, we consider the length of a sentence to determine whether it is excessive.  *State v. Lilley*, 624 A.2d 935, 937 (Me. 1993).  One of the purposes of sentence review is "[t]o facilitate the possible rehabilitation of an offender by reducing manifest and unwarranted inequalities among the sentences of comparable offenders."  15 M.R.S. § 2154(3).  Although excessiveness and inequality in sentencing are distinct concepts, they are closely aligned and arise from the requirement in the Maine Constitution that "all penalties and punishments shall be proportioned to the offense."  Me. Const. art I, § 9; *State v. Ward*, 2011 ME 74, ¶ 16, 21 A.3d 1033.  The proportionality requirement of article I, section 9, is reflected in the Maine Criminal Code among the purposes of sentencing stated in 17-A M.R.S. § 1151(5) ("To eliminate inequalities in sentences that are unrelated to legitimate criminological goals.").

[¶26]  Courts rarely find sentences disproportionate pursuant to the Eighth Amendment of the United States Constitution, except in cases involving the death penalty or juvenile defendants.  *See Miller v. Alabama*, 132 S. Ct. 2455, 2463-64

(2012) (providing a history of Eighth Amendment cases regarding excessive sentences and concluding "that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment"). However, the United States Supreme Court has recognized that the Maine Constitution anticipates a broader proportionality review than the Eighth Amendment. After stating that "the Eighth Amendment contains no proportionality guarantee" in *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), the Court further noted that "[d]uring the 19th century several States ratified constitutions that prohibited 'cruel and unusual,' 'cruel or unusual,' or simply 'cruel' punishments *and* required *all* punishments to be proportioned to the offense," and referenced six state constitutional provisions, including the proportionality clause in the Maine Constitution, *id.* at 982 (referencing Me. Const., art. I. § 9 (1819)); *see also Ward*, 2011 ME 74, ¶ 17, 21 A.3d 1033 (noting the proportionality language in the Maine Constitution). Presently, eight states have proportionality requirements in their constitutions and another two have interpreted their constitutions to require proportionality in sentencing. *See* Gregory S. Schneider, Note, *Sentencing Proportionality in the States*, 54 Ariz. L. Rev. 241, 242 (2012).[5]

---

[5] Schneider notes, "that Indiana, Maine, Nebraska, New Hampshire, Oregon, Rhode Island, Vermont, and West Virginia have explicit provisions, and that Illinois and Washington have interpreted their constitutions to require proportionality." Gregory S. Schneider, Note, *Sentencing Proportionality in the States*, 54 Ariz. L. Rev. 241, 242 n.2 (2012) (citing Richard S. Frase, *Limiting Excessive Prison Sentences Under Federal and State Constitutions*, 11 U. Pa. J. Const. L. 39, 64 (2008)).

[¶27] The use of a proportionality analysis pursuant to a state constitution is largely supported by academic literature.[6] The literature has found that a broad cross-section of states has utilized state constitutional law to invalidate excessive sentences. *See, e.g.*, Richard S. Frase, *Limiting Excessive Prison Sentences Under Federal and State Constitutions*, 11 U. Pa. J. Const. L. 39, 67 (2008). Accordingly, states that have embraced proportionality review pursuant to their state constitution may vacate a defendant's sentence if it is a harsher penalty than the sentences other defendants received when convicted of the same crime. Schneider, at 264. Additionally, the literature supports proportionality analysis because it permits meaningful appellate review of sentences that are claimed to be excessive. Schneider, at 275; *see also* Thomas A. Balmer, *Some Thoughts on Proportionality*, 87 Or. L. Rev. 783, 787-89 (2008) (providing historical support, going back to Blackstone, for the use of proportionality).

[¶28] The Maine Constitution requires that "all penalties and punishments shall be proportioned to the offense." Me. Const. art I, § 9. Like other states containing similar language in their state constitutions, we conduct a

---

[6] *See* Joy M. Donham, *Third Strike or Merely a Foul Tip?: The Gross Disproportionality of* Lockyer v. Andrade, 38 Akron L. Rev. 369, 397 (2005) (noting a need for proportionality to keep a check on state legislatures' power); Frase, at 57-58 (expressing disappointment with the Supreme Court's handling of proportionality); Schneider, at 275. *But see* Kenneth A. Sprenger, *Pass the Discretion Please*, 58 Ark. L. Rev. 425, 426-27 (2005) (supporting the Arkansas Supreme Court's view of extremely limited appellate involvement with sentencing).

proportionality review that is broader than the proportionality review that derives from the Eighth Amendment's prohibition against cruel and unusual punishment. *See Harmelin*, 501 U.S. at 965 (acknowledging that unlike the U.S. Constitution, some state constitutions, including Maine's, contain express prohibitions against disproportionate sentences); *Ward*, 2011 ME 74, ¶ 17, 21 A.3d 1033 (noting the express language in the Maine Constitution); *People v. Sharpe*, 839 N.E.2d 492, 521 (Ill. 2005) (conducting proportionality review pursuant to the Illinois Constitution); *State v. Rodriguez*, 217 P.3d 659, 671 (Ore. 2009) (the Oregon Constitution); *State v. Fain*, 617 P.2d 720, 727-28 (Wash. 1980) (the Washington Constitution); *Wanstreet v. Bordenkircher*, 276 S.E.2d 205, 210 (W. Va. 1981) (the West Virginia Constitution).

[¶29]   To determine whether a sentence is disproportionate we conduct a two-part test.  First, we compare "the gravity of the offense [with] the severity of the sentence."  *Ward*, 2011 ME 74, ¶ 20 n.5, 21 A.3d 1033 (quoting *Graham v. Florida*, 130 S. Ct. 2011, 2022 (2010)).  Second, if this comparison results in "an inference of gross disproportionality [we] then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction."  *Id.* (quoting *Graham*, 130 S. Ct. at 2022).

18

### 1. Comparing the Offense and the Sentence

[¶30] Factors affecting the proportionality of a sentence to the offense are determined on a case-by-case basis because "no one factor will be dispositive in a given case," *Harmelin*, 501 U.S. at 965 (quoting, but criticizing on other grounds, *Solem v. Helm*, 463 U.S. 277, 291, n.17 (1983)). Regardless, when gauging proportionality, reviewing courts often consider the facts of the case in conjunction with "[t]he commonly accepted goals of punishment." *Bult v. Leapley*, 507 N.W.2d 325, 327 (S.D. 1993) (citing *Gregg v. Georgia*, 428 U.S. 153 (1976)) (listing retribution, individual and general deterrence, and rehabilitation). In Maine, the criminal code provides eight goals of punishment:

**1.** To prevent crime through the deterrent effect of sentences, the rehabilitation of convicted persons, and the restraint of convicted persons when required in the interest of public safety;

**2.** To encourage restitution in all cases in which the victim can be compensated and other purposes of sentencing can be appropriately served;

**3.** To minimize correctional experiences which serve to promote further criminality;

**4.** To give fair warning of the nature of the sentences that may be imposed on the conviction of a crime;

**5.** To eliminate inequalities in sentences that are unrelated to legitimate criminological goals;

**6.** To encourage differentiation among offenders with a view to a just individualization of sentences;

**7.** To promote the development of correctional programs which elicit the cooperation of convicted persons; and

**8.** To permit sentences that do not diminish the gravity of offenses. . . .

17-A M.R.S. § 1151 (2012).

[¶31] In this case, Stanislaw had unlawful and inappropriate sexual contact with a young girl resulting in three convictions for Class B unlawful sexual contact. In committing those crimes, he caused significant emotional harm to the girl, to her family, and to members of the family's community, many of whom had had a long-term, trusting relationship with Stanislaw. The court reflected its recognition of the harm caused by Stanislaw by increasing the sentence for each offense from the basic sentence of six years to eight years. The court then concluded that even eight years of incarceration was insufficient, and imposed consecutive sentences for each of the three Class B crimes, although the crimes involved the same victim, and although they arguably constituted a single course of conduct.

[¶32] Stanislaw also touched and kissed another girl, when she was slightly older, and for that act was convicted of one count of Class C unlawful sexual contact. Stanislaw's crime caused significant emotional harm to the girl and to her family. The court reflected the extent of that harm by increasing the sentence for

that offense from the basic sentence of three years to four years. Again, the court concluded that the sentence warranted by this separate crime should be imposed consecutively to the sentences imposed for the crimes against the first victim.

[¶33] As we noted earlier, we find no error in the court's determination concerning the maximum sentence for each crime, nor in its determination that the sentences for these four felonies should be imposed consecutively. However, by failing to suspend any portion of the three eight-year sentences imposed for the Class B convictions, and then suspending only one year of the four-year sentence imposed for the Class C felony, the court imposed a sentence that does not comport with section 1151, and cannot be upheld. Stanislaw's twenty-seven years of incarceration will undoubtedly deter him from committing similar crimes during that period, thereby promoting public safety. The incarceration, however, precludes any opportunity for the legislatively established goal of rehabilitation; does not, in any way, minimize a correctional experience that may serve to promote further criminality; and creates an overall sentence for three Class B offenses that exceeds sentences imposed for even more serious crimes. Based on these factors, we find an inference of gross disproportionality between his sentence on the Class B offenses and the offenses he committed.

2.     Comparable Sentences

[¶34]  With this inference of gross disproportionality between the offenses and the sentence, we turn to compare Stanislaw's sentence to the sentences imposed for similar or more severe crimes within our jurisdiction.  *See Ward*, 2011 ME 74, ¶ 20 n.5, 21 A.3d 1033 (setting forth the two-part test for disproportionality analysis).  In this analysis, we recognize that comparisons among cases are difficult due to the multitude of factors that are taken into account, including the crimes as committed, the defendant's prior record, whether the sentence was imposed after a trial or after a plea, and the age and other characteristics of the victims.  Given the differences among cases, there will almost never be a precedent involving identical sentencing facts, and therefore exact comparisons are not possible.  In order to create as precise a comparison as possible, however, we will review the sentence in light of the sentences imposed in four groups of cases:  (a) the comparable sentences presented by the State to the sentencing court in this case, (b) cases involving comparable unsuspended prison terms, (c) cases of gross sexual assault, and (d) cases of unlawful sexual contact.

(a)     Comparable Sentences Presented by the State to the Sentencing Court

[¶35]  First, we consider the four "comparable" cases the State provided at the original sentencing.  *See Stanislaw I*, 2011 ME 67, ¶ 11 n.8, 21 A.3d 91.  These

cases all involved sex crimes with multiple consecutive sentences. In each case, a conviction was obtained after trial, while here, Stanislaw waived his jury trial right and pleaded guilty. The comparable cases also all involved defendants with no prior convictions for similar offenses, while here, Stanislaw had a 1982 conviction for a similar offense. Nonetheless, these are the cases the State believed would assist the sentencing court in reaching an appropriate sentence and the sentencing court is free to consider these differences when determining what weight to give the comparable sentences presented to it by the State and the defendant.

[¶36] The first case presented by the State involved four victims of unstated age and included crimes ranging from Class A to Class D. *Id.* For those acts, after trial, the defendant received three consecutive sentences. *Id.* The first sentence was fifteen years, with all but eight years suspended, and ten years' probation. *Id.* The second sentence was eight years, all suspended, with six years' probation, and the third sentence was fifteen years, all suspended, with ten years' probation. *Id.* Overall, that defendant was sentenced to thirty-eight years, with all but eight years suspended, and twenty-six years' probation. *Id.*

[¶37] The second case involved one victim who was age nine and included one Class B unlawful sexual contact conviction and seven Class C unlawful sexual contact convictions. *Id.* For those acts, after trial, the defendant received consecutive sentences on all counts. *Id.* The Class B conviction resulted in a

sentence of eight years, with all but four years suspended, and four years' probation. *Id.* The seven Class C convictions each resulted in sentences of two and a half years, all suspended, with one year probation. *Id.* Overall, the defendant was sentenced to twenty-five and a half years, with all but four years suspended, and eleven years' probation.

[¶38] The third case involved two victims of unstated age and included one Class B unlawful sexual contact conviction and two Class D assault convictions. *Id.* For those acts, after trial, the defendant received three consecutive sentences. *Id.* For the Class B conviction he received seven years, with all but three years suspended, and twelve years of probation. *Id.* For each of the two Class D convictions he received eleven months, all suspended, and one year of probation. *Id.* In total, the defendant was sentenced to eight years and ten months, with all but three years suspended, and fourteen years' probation.

[¶39] The fourth case involved one victim who was age five and included one Class B conviction for unlawful sexual contact. *Id.* For that act, after trial, the defendant received a sentence of seven years, with all but three years suspended, and eight years' probation. *Id.*

[¶40] The State argues to us that these four sentences are comparable to Stanislaw's sentence when the overall sentences, including the suspended portions of the sentences, are taken into account. That is not a reasonable comparison to

make; a prison term is simply not the equivalent of a suspended prison term and probation. Logic recognizes this, and both the third step of the *Hewey* analysis and our jurisprudence reflect this. 17-A M.R.S. § 1252-C(3) (determining what portion of the sentence should be suspended); *see State v. Reese*, 2010 ME 30, ¶ 32, 991 A.2d 806 (holding that the sentencing court appropriately considered relevant factors when determining whether any portion of the sentence should be suspended). The cases chosen by the State to assist the sentencing court all involved conduct that is either as serious or more serious than the acts committed by Stanislaw and resulted in sentences ranging from three to eight years of unsuspended incarceration. In contrast, Stanislaw's sentence results in twenty-seven years of unsuspended incarceration, a period three to nine times longer than the unsuspended sentence imposed in any of the cases chosen by the State as comparables. Using this method of comparison, Stanislaw's sentence appears grossly disproportionate.

(b) Cases Involving Comparable Unsuspended Prison Terms

[¶41] The second comparison focuses on cases involving prison terms comparable to Stanislaw's unsuspended term of twenty-seven years. In *State v. Archer*, 2011 ME 80, ¶¶ 1, 3, 4, 6, 25 A.3d 103, the defendant was convicted of attempted murder and elevated aggravated assault for stabbing his ex-girlfriend with the stated intent of killing her. He was sentenced to eighteen years of

imprisonment, with all but thirteen years suspended, for the attempted murder conviction, and thirteen years of imprisonment for the elevated aggravated assault to be served concurrently, along with four years of probation. *Id.* ¶ 16.

[¶42] In *Reese*, 2010 ME 30, ¶¶ 1, 3, 25, 991 A.2d 806, the defendant was convicted of elevated aggravated assault for shooting toward the victim nine times, striking her with two bullets that inflicted life-threatening injuries, and abandoning her where she collapsed on the side of a road at night. We held that the sentence of a term of imprisonment of twenty-nine years, with no portion suspended, was not excessive. *Id.* ¶¶ 1, 35.

[¶43] In *State v. Keene*, 2007 ME 84, ¶¶ 2, 7, 927 A.2d 398, we upheld a sentence of thirty years' imprisonment for a conviction of manslaughter and kidnapping. The defendant shoved the victim's head into a brick wall in an alley, and then placed her in his truck and intentionally drove in such a manner that she fell out of the truck and onto the road. *Id.* ¶¶ 4 & n.4, 5. The victim died a few days later due to a head injury. *Id.* ¶ 5. The trial court ordered the two consecutive sentences based on the defendant's probationary status and the seriousness of the crimes: a twenty-year sentence for manslaughter and a sixteen-year sentence, with all but ten years suspended, for the kidnapping. *Id.* ¶ 7. The defendant's total unsuspended sentence was thirty years.

[¶44] In *State v. Dumas*, 2010 ME 57, ¶ 11, 997 A.2d 760, the defendant was sentenced to a thirty-year period of imprisonment for a murder conviction following a jury trial. The defendant ingested an "8 ball" of cocaine and, while "out of [his] mind," shot a friend five times, killing the friend. *Id.* ¶ 8.

[¶45] These cases involve crimes that are more violent than Stanislaw's actions; in all four cases the victim either lost or nearly lost his or her life. Despite this distinction, these defendants were sentenced at most to spend only three years in prison longer than was Stanislaw. This comparison also suggests the disproportionate nature of Stanislaw's sentence.

(c)     Cases of Gross Sexual Assault

[¶46] The third comparison focuses on cases involving the more serious crime of gross sexual assault, pursuant to 17-A M.R.S. § 253 (2012).[7] Stanislaw's unsuspended prison term is longer, sometimes significantly so, than those imposed in many gross sexual assault cases. For example, in *State v. Soucy*, 2006 ME 8, ¶¶ 1, 3 n.3, 890 A.2d 719, the defendant was convicted of two counts of gross sexual assault (Class A) and three counts of unlawful sexual contact (Class B), and he had a prior conviction of one count of gross sexual misconduct (Class A) and three counts of unlawful sexual contact (Class C). He was sentenced to thirty-five

---

[7] All convictions for gross sexual assault, unlike those for unlawful sexual contact, require proof beyond a reasonable doubt that the defendant has committed a sexual act against the victim. See footnote two of this opinion for the definition of "sexual act" in 17-A M.R.S. § 251(1)(C).

years, with all but twenty years suspended, for over one hundred instances of sexual touching and at least five acts of rape. *Id.* ¶¶ 4, 10. Other examples are *State v. Gould*, 2012 ME 60, 43 A.3d 952, in which the defendant was sentenced to twelve years of unsuspended imprisonment for two counts of gross sexual assault; *State v. Dion*, 2007 ME 87, 928 A.2d 746, in which the defendant was sentenced to five years and one day of unsuspended imprisonment for gross sexual assault against a three-year-old victim; *State v. Lewis*, 1998 ME 83, 711 A.2d 119, in which the defendant, who had a prior violent record, was sentenced to nine years of unsuspended imprisonment for thirty to forty instances of sexual abuse against an elementary school student; and *State v. Prewara*, 687 A.2d 951 (Me. 1996), in which we upheld the defendant's sentence of fifteen years of unsuspended imprisonment for sexually assaulting a six-month old causing bruising, bleeding, and substantial tearing of her vagina. Stanislaw's unsuspended sentence for convictions of unlawful sexual contact was longer than many, but not all, unsuspended sentences imposed in gross sexual assault cases. This inconsistency suggests a lack of proportionality.

(d) Cases Involving Unlawful Sexual Contact

[¶47] The fourth area of comparison consists of a review of cases involving unlawful sexual contact, which is the crime at issue here. As with the cases the State presented, we recognize that these cases are not directly comparable because

Stanislaw had multiple victims and his actions took place over an extended timeframe. Nonetheless, these cases do provide some information about sentences imposed on other defendants whose actions fall within the definition of unlawful sexual contact, Stanislaw's most serious crimes. Examples include *State v. Severy*, 2010 ME 126, 8 A.3d 715, in which the defendant was sentenced to six years of unsuspended imprisonment for repeatedly allowing and encouraging a seven or eight-year-old girl to rub his penis; *State v. Lavoie*, 2010 ME 76, 1 A.3d 408, in which the defendant was sentenced to five years of unsuspended imprisonment for reaching down the pants of a nine-year-old girl; *State v. Graham*, 2010 ME 60, 998 A.2d 339, in which the defendant was sentenced to three and a half years of unsuspended imprisonment for exposing himself to and touching the genitals of a nine-year-old girl; and *State v. Moores*, 2006 ME 139, 910 A.2d 373, in which the defendant was sentenced to three and a half years of unsuspended imprisonment for twice touching the genitals of a thirteen-year-old girl. We note that Stanislaw's term of imprisonment is roughly four and a half to eight times longer than the terms of imprisonment for these defendants.

(e) Conclusion Regarding Comparisons

[¶48] The disparity in sentences revealed by all four categories of comparison leads us to conclude that, although Stanislaw's total sentence is within the parameters of the sentencing statutes, the unsuspended portion of the period of

imprisonment is grossly disproportionate to the crimes he committed when compared to the sentences imposed for the same or similar crimes, and some more serious crimes. As we noted in *Stanislaw I*, Stanislaw pleaded guilty to several serious crimes. 2011 ME 67, ¶ 12, 21 A.3d 91. His abuse of the trust placed in him was deplorable and may result in significant lasting emotional injury to the victims. Without minimizing the harm suffered by the victims due to Stanislaw's inexcusable and deviant acts, his offenses must also be assessed by what they did not involve. Stanislaw was convicted of crimes involving contact between hands and genitals, hugging while nude, and kissing. His crimes were appalling, but they did not involve the use of physical force or a weapon, threats of violence, or any other factors that warrant an ultimate sentence imposing an unsuspended twenty-seven-year term of imprisonment.

3. Conclusion Regarding Excessiveness of the Overall Sentence

[¶49] In sum, for the reasons articulated by the sentencing court, it is appropriate for a portion of Stanislaw's term to be served consecutively to another term. *See Keene*, 2007 ME 84, ¶ 26, 927 A.2d 398 (noting that "a defendant does not have a constitutional right to serve concurrent sentences for multiple violent offenses"). However, the court failed to consider whether the resulting overall unsuspended portion of Stanislaw's sentence should be subject to any additional suspension in order to ensure that the overall sentence was proportionate. As a

result, and as shown by the comparative analysis we have undertaken, the unsuspended portion of Stanislaw's overall sentence is disproportionate and must be vacated. In short, to avoid an overall sentence in this case that will result in "manifest and unwarranted inequalities among the sentences of comparable offenders," 15 M.R.S. § 2154(3), and fails "[t]o eliminate inequalities in sentences that are unrelated to legitimate criminological goals," 17-A M.R.S. § 1151(5), the court must sentence Stanislaw to an unsuspended term of imprisonment that is shorter than sentences imposed on defendants who have raped, kidnapped, or killed their victims.

[¶50] By imposing a sentence that included twenty-seven unsuspended years of incarceration, the court exceeded its discretion and therefore erred. The underlying consecutive sentences themselves do not create a proportionality problem. The proportionality problem exists with the unsuspended twenty-seven years of the overall sentence because it is far out of line with sentences of other defendants convicted of unlawful sexual contact. Because this is an unusual case in that we have now twice vacated the sentences imposed, and the need for finality is particularly acute because the case involves young victims, we provide additional guidance for the sentencing on remand, cautioning that it is based on the existing sentencing record and not on the record that may be developed following our remand. The data presently available to us suggests that an unsuspended

sentence of one-third to one-half of the current unsuspended sentence would comply with our constitutional and statutory proportionality requirements. Such a sentence protects the public from Stanislaw, deters crime through the suspended sentence and accompanying probation, and yet does not diminish the gravity of Stanislaw's offenses. Accordingly, we vacate the sentence and remand for resentencing. *See* 15 M.R.S. § 2156(1-A) (2012).

D. Reassignment

[¶51] We deny Stanislaw's request that we include an order that on remand a different Justice be assigned to undertake resentencing. Although we have now vacated two sentencing decisions in this case, we discern no basis on which to order a reassignment to a different Justice.

The entry is:

> Sentence vacated and remanded to the Superior Court for resentencing consistent with the opinion herein.

---

SAUFLEY, C.J., with whom MEAD and GORMAN, JJ., join, concurring in part and dissenting in part.

[¶52] With the greatest respect for the difficulty facing appellate courts and trial courts in determining appropriate sentences in child sex offense cases, I

cannot agree with the Court's conclusion that a proportionality analysis would result in a sentence that is reduced by one-half to two-thirds, because neither we nor the trial court have enough information to make such a determination.

[¶53] I concur in the Court's conclusion that the sentence must be vacated and the case remanded for further consideration, and I concur in the Court's analysis regarding the trial court's responsibility to assure that consecutive sentences are accompanied by a final review for proportionality. I also concur in the Court's analysis regarding the unusual structure of the sentence, which, I note, leaves Stanislaw with only four years of probation and only a single year of incarceration anchoring that probation period, despite the evident need for a longer period of close supervision to protect children.

[¶54] I must, however, respectfully dissent from the Court's opinion in two respects. First and foremost, no resentence of this admitted sex offender should occur without a thorough and searching review of his history. Nor should a contested sentence in the range of this sentence ever be undertaken in *any* case without such a review of the defendant's history. Second, because it is affirmatively not the role of the Law Court to set sentences, the Court's discussion of an appropriate range for the sentence in this case should not be read to impose a specific upper limit on the sentence that the trial court may impose on remand. The authority to sentence a defendant is reserved entirely to the trial court.

Therefore, I caution that the Court's suggestion today of the range for the sentence that should be imposed on remand, if read as a mandate, would exceed this Court's authority and prerogative.

[¶55]  Moreover, the suggestion of an appropriate range, even in a precatory fashion in the context of a proportionality discussion, should not be made on the record before us because the record lacks necessary information regarding Stanislaw's background.

## I.  FACTUAL BACKGROUND AND SENTENCING PROCESS

[¶56]  We cannot overlook the factual context in which this sentence was initially imposed, including Stanislaw's prior felony child sexual abuse conviction; his highly skillful cultivation of the parents' trust; the number of victims; the number of days, weeks, months, and years in which he perpetrated his crimes and abused each victim; and the effect on the child victims and the community of a person who has the intellect, but not the moral fiber, to recognize that his behavior is abhorrent.

[¶57]  Notwithstanding this background, the State, at the original sentencing, made no specific recommendation for a final period of incarceration and did not present a presentence investigation report.  Most strikingly, the State offered no information whatsoever about Stanislaw's history between 1982, when he was convicted of his first crime of child sexual abuse, and 2004, more than

twenty years later, when he first began to abuse children in Blue Hill. Stanislaw pleaded guilty to each of the charges in an "open plea" format. His attorney argued that Stanislaw should spend no time in jail but that a substantial period of probation should be imposed. For its part, the State did not present a presentence investigation, did not give the court information on Stanislaw's missing twenty-two years, and did not provide a recommended sentence. It did, however, provide sentences from four roughly comparable cases, the highest of which called for a final sentence of eight years in prison, with a lengthy underlying sentence and a long period of probation.[8]

[¶58] Thus, with Stanislaw arguing for no jail time, and the State suggesting that eight years was the highest appropriate final sentence, the trial court imposed a final sentence that was more than three times higher than the outer range presented by the State, and it did so without information regarding Stanislaw's history and without the specific findings required by statute. *See State v. Stanislaw*, 2011 ME

---

[8] The longest final prison sentence included in the State's materials was eight years. This may explain the absence of a background evaluation or presentence investigation report in the first sentencing. In the case with the longest sentence, the sentencing court imposed an underlying sentence of thirty-eight years, with eight years to be immediately served in prison, and twenty-six years of probation. The next most severe of the comparables imposed an underlying sentence of twenty-five and a half years, with four years to be served in prison immediately, and eleven years of probation. The other two comparable sentences involved underlying sentences of seven and nearly nine years, respectively, with three years to be served in prison immediately in each case. Thus, the longest final sentence of imprisonment suggested by the State was eight years.

67, ¶¶ 4, 16, 21 A.3d 91; *see* 17-A M.R.S. § 1252-C(1) (2012). Accordingly, we vacated the sentence and remanded the case for resentencing. *Id.* ¶ 16.

[¶59] On remand, the court did not request or receive a presentence investigation report or any other new information from the parties. Again, both parties failed to provide any information whatsoever regarding Stanislaw's whereabouts, his employment, his contact with children, his criminal records, or any other aspect of his life during the time between Stanislaw's felony conviction in 1982 and his activities in the Blue Hill community beginning in 2004. Notwithstanding the absence of this critical information about the defendant's history, a substantial focus of the sentencing court was the court's assessment that Stanislaw was not a good candidate for rehabilitation.

[¶60] When a sentencing court is considering, in a contested sentencing, the imposition of a sentence that is likely to place the defendant in prison for twenty years or more, and is determining the need for and potential efficacy of probation, the best practice is for the court to have a presentence investigation report or other accurate and detailed information about the defendant and his background, including the level of danger to the public and the defendant's amenability to rehabilitation. Without that information, it is difficult, if not impossible, for the court to thoughtfully address the second and third steps of the required statutory sentencing analysis, and nearly impossible for an appellate court to meaningfully

review that analysis. In this case, the gap in information is particularly evident in the trial court's decision to impose such a brief period of probation in circumstances where the court also determined that the defendant presents a grave danger to children in the community.

[¶61] Recognizing that we should have explicitly required a thorough background investigation upon our earlier remand, I would now explicitly mandate a presentence investigation report before Stanislaw is resentenced.

## II. LAW COURT AUTHORITY IN THE SENTENCING PROCESS

[¶62] After carefully analyzing the legal requirements for proportionality, rather than simply remanding for the trial court to apply the law correctly, the Court today suggests that the sentence to be determined upon remand should not exceed thirteen and a half years.

[¶63] To the extent that the Court's suggestion is intended to provide assistance to the trial court in addressing the proportionality analysis that is required in this instance due to the imposition of multiple consecutive sentences, the Court acts within its authority to provide guidance regarding the application of the sentencing statutes.

[¶64] To be clear, however, it is not within the authority of the Law Court to *sentence* any individual who has been convicted of a crime. The Court's authority is limited to assuring that the law is followed, including by assuring

accurate application of the sentencing factors, facilitating rehabilitation when that is possible, promoting respect for the law, and promoting the development of rational and just sentencing criteria. *See* 15 M.R.S. § 2154 (2012). The only relief that is authorized when the Law Court has determined that there was an error in sentencing is as follows: the Court "must remand the case to the court that imposed the sentence for any further proceedings that could have been conducted prior to the imposition of the sentence under review and for resentencing *on the basis of such further proceedings*." 15 M.R.S. § 2156(1-A) (2012) (emphasis added).[9]

[¶65] Although I certainly understand the intent of the Court to provide guidance to the trial judge following remand, I remain concerned that the Court's suggestion in this context could be misunderstood as a mandate. Therefore, I write to stress that it would be inaccurate to read the Court's suggested range as setting a hard limit on the sentence that could be imposed on remand.

---

[9] The Law Court once had the statutory authority to set the sentence to be imposed on remand. *See* 15 M.R.S.A. § 2156(1) (Supp. 1989) (authorizing the Supreme Judicial Court to "[s]ubstitute for the sentence under review any other disposition that was open to the sentencing court, provided however, that the sentence substituted shall not be more severe than the sentence appealed"). That authority was eliminated by the Legislature, *see* P.L. 1991, ch. 525, §§ 3, 4 (effective June 30, 1991), after the Court specifically reduced the sentences of sex offenders in a pair of sentence appeals, *see State v. Clark*, 591 A.2d 462 (Me. 1991) (on obvious error review, reducing a sentence of imprisonment for gross sexual assault from thirty years to fifteen years); *State v. Michaud*, 590 A.2d 538 (Me. 1991) (reducing a sentence of imprisonment for two counts of gross sexual misconduct from forty years to fifteen years, all but twelve suspended); *see also State v. Lewis*, 590 A.2d 149 (Me. 1991) (reducing a sentence of imprisonment in an arson case from twenty years, all but fifteen suspended, to ten years, all but eight suspended); *State v. Gosselin*, 600 A.2d 1108 (Me. 1991) (vacating and remanding, *without* ordering the replacement sentence, a forty-year sentence imposed upon a manslaughter conviction after the 1991 repeal of section 2156(1)).

[¶66]   Finally, I note that the Court's suggested sentencing range is presented in the absence of a complete background investigation of Theodore Stanislaw.  I would not offer such a range, suggesting that the maximum sentence should not exceed thirteen and a half years, in the absence of that information.

## III.  CONCLUSION

[¶67]   I concur in the Court's determinations that the sentence must be vacated, that a proportionality analysis should be undertaken before the final sentence is imposed, and that the structure of that final sentence must be carefully reviewed by the trial court.  I would mandate a thorough and searching history of Stanislaw before any further consideration of an appropriate sentence.  And I would reject any reading of the Court's opinion that limits the maximum unsuspended prison time to thirteen and a half years.  We should not usurp the authority of the trial court to engage in one of its most important responsibilities, and we should not suggest a prospective sentence when all of the critical facts are not yet available.  I would remand for the court to require the completion of a thorough presentence investigation of Stanislaw before any further sentencing is undertaken.

**On the briefs:**

> Glen L. Porter, Esq., and Ryan P. Dumais, Esq., Eaton Peabody, Bangor, for appellant Theodore S. Stanislaw

> Carletta Bassano, District Attorney, and Mary N. Kellett, Asst. Dist. Atty., Prosecutorial District No. VII, Ellsworth, for appellee State of Maine

**At oral argument:**

> Glen L. Porter, Esq., for appellant Theodore S. Stanislaw

> Mary N. Kellett, Asst. Dist. Atty., Prosecutorial District No. VII, Ellsworth, for appellee State of Maine

Hancock County Superior Court docket number CR-2008-292
FOR CLERK REFERENCE ONLY